Jennifer SAVAGE, et al., Plaintiffs,

v.

**SCRIPTO–TOKAI CORP. and Tokai Corp., Defendants.**

No. 3:00CV1158(JBA).

United States District Court, D. Connecticut.

April 30, 2001.

Michael A. Stratton, Koskoff, Koskoff & Bieder, P.C., Bridgeport, CT, for Plaintiffs.

James H. Rotondo, Maxwell Branson, Day, Berry & Howard, Hartford, CT, for Defendants.

## MEMORANDUM OF DECISION

ARTERTON, District Judge.

Defendant Tokai Corporation ("Tokai"), the parent corporation of defendant Scripto–Tokai Corporation ("Scripto") seeks dismissal of all claims against it for lack of personal jurisdiction. Jurisdictional discovery was allowed, and the facts regarding the contacts between Tokai and Connecticut are largely undisputed. Plaintiff primarily seeks to predicate jurisdiction over Tokai on Tokai's relationship with Scripto, its wholly-owned subsidiary, to which it has granted exclusive rights to market and distribute to the United States "Aim n' Flame" lighters, and the resulting sale of approximately 100 million of these lighters. For the reasons that follow, the Court concludes that Tokai's "contacts" with Connecticut are insufficient to satisfy the requirements of due process, and accordingly GRANTS defendant Tokai's motion (Doc. # 10).

### Standard

When responding to a Rule 12(b)(2) motion to dismiss for lack of per-

sonal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994). Where a court has chosen not to conduct a full-blown evidentiary hearing on the motion, "the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). Where as here, however, "the parties have conducted extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held—the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999). Because the facts at issue are largely undisputed, no hearing is needed or has been requested.

### Factual Background

Plaintiffs brought this product liability action[1] in Connecticut Superior court against defendants Scripto, a Delaware corporation with its principal place of business in California, and Tokai, a Japanese corporation, alleging that a multi-purpose lighter (known as an "Aim n' Flame") manufactured, designed and/or distributed by the defendants ignited a fire in their Bridgeport, Connecticut home, causing the death of one plaintiff and severe injuries to another and her two minor children, whose claims are brought by their court-appointed guardian. Amended Complaint ¶¶ 1, 4. Defendants removed the action to federal court on diversity grounds, and defendant Tokai has moved to dismiss all claims against it. It is undisputed that Tokai is a corporation existing under the laws of Japan, with its headquarters and principal place of business in Tokyo. Tazuke Aff. ¶¶ 2, 3. Scripto, based in California, is a wholly owned subsidiary that Tokai acquired in 1984, the same year that the Aim n' Flame was first patented in Japan. Pl. Ex. A, Int. Resp. # 17; Pl.Ex. H. Scripto is the sole distributor of Tokai's products in this country, including the Aim n' Flame. No formal or written distribution agreement between the two companies exists.

In addition to Scripto's status as a wholly-owned subsidiary of Tokai, the record shows the connections between the two corporations as follows: Scripto's president is appointed by Tokai, and has been based in the United States except for the periods of 1988 until 1990 and 1993 until 1994, when the president was based in Japan at Tokai headquarters. Ashley Aff. ¶ 11. Of the six members who have served on Scripto's board of directors since 1995, three were Tokai executives, Pl.Ex. D, and claims against Scripto may have been reported to Tokai. Pl.Ex. E. At least one Tokai executive attended lighter industry meetings in the United States, although the frequency and subject matter of such meetings is not disclosed by the record. Pl.Ex. F. Scripto and Tokai also have collaborated on the development of a new, child-resistant lighter. Pl.Ex. F and Ex.

---

**1.** Counts Two, Four, Six, and Eight of Plaintiffs' Amended Complaint also allege Connecticut Unfair Trade Practice Act (CUTPA) violations. This Court certified to the Connecticut Supreme Court the question of whether the exclusivity provisions of the Connecticut Product Liability Act, Conn. Gen.Stat. § 52– 572(m), barred a claim for the same injuries against a product seller under CUTPA, Conn. Gen.Stat. § 42–110a. On January 25, 2001, the Connecticut Supreme Court accepted the certified question. *See* Letter from Francis Drumm, Jr. dated January 25, 2001 (Doc. # 69).

G. Scripto had input into the "ornamental" appearance of a second generation multi-purpose lighter, the Aim n' Flame II, and holds the "ornamental design patent" for that device. Kurata Aff. ¶ 6; Pl.Ex. G. Tokai designed both the Aim n' Flame and the Aim n' Flame II, and the Aim n' Flame was originally manufactured by Tokai and sold in Japan. It was introduced to the United States market in 1985, where between 1985 and 1996 nearly 100 million units were sold. Pl.Ex. I. Tokai manufactured the Aim n' Flame until 1991, and has manufactured the component parts for the lighter since 1992. The lighter is manufactured or assembled at non-defendants Tokai de Mexico, S.A. and JMP Mexico S.A. de C.V. ("JMP"), subsidiaries of Tokai. *See* Pl. Exs. I, K. Scripto distributes Tokai products, including utility lighters, nationwide, and both prior to and after the date of the August 25, 1997 fire, it sold the Aim n' Flame and Aim n' Flame II to locations within the State of Connecticut. Pl.Ex. O.

In support of its motion to dismiss, Tokai submitted the following undisputed evidence disclaiming any connection to Connecticut: Tokai has no mailing address or telephone listing in Connecticut; has never been licensed to do business in Connecticut; has no offices or employees and maintains no agent for service of process in Connecticut; has conducted no contract negotiations in Connecticut; never owned real property here; and has never sent any employees or agents into the state to carry on business on its behalf. Tazuke Aff. ¶¶ 5–13. According to Tokai's Manager of International Sales, Tomoyuki Kurata, when Tokai sells the component parts that it manufactures to companies doing business outside Japan, "Tokai's involve-

ment with those parts generally ends when the parts are delivered to the customer in proper working order," and it "is not involved in decisions concerning how such parts are used by Tokai's customers," although the Court has no indication of the meaning of "customers" as used in the Kurata Affidavit. Kurata Aff. ¶ 5. There is no indication that Tokai directs or is involved in any way in the manufacturing or assembly process at the facilities in Mexico, and the only record of communications on the subject of manufacture and placement of orders is between Scripto and JMP and/or Tokai de Mexico, not Tokai.[2] Although at oral argument counsel for Tokai conceded that it was aware of the total U.S. sales volume for its products, Tokai has not been shown to have any involvement in the marketing or sale of lighters in the United States, and "does not control the marketing or distribution of products by Scripto." Kurata Aff. ¶ 8. In further support of Tokai's motion, the Vice–President of Administration for Scripto has submitted an affidavit averring that "Scripto employees make the decisions regarding the day to day operations of Scripto, including marketing and operational decisions," and that "[t]he Tokai employees who sat on Scripto's board had no direct involvement in running the day to day operations of Scripto." Ashley Aff. ¶¶ 7, 12.

Plaintiffs submit nothing to contradict these assertions of non-involvement and lack of contacts with Connecticut. Instead, plaintiffs focus on the facts of Tokai's ownership interest in Scripto and its exercise of its right to name the president and some board members as constituting an inferable "channel of distribution" from

**2.** In fact, the evidence submitted by the plaintiff in opposition to the motion indicates that since 1995, the president of Scripto has also served as the president of JMP. Pl.Ex. D. Scripto owns all of JMP's stock, and JMP produces products "according to Scripto's directions." Pl.Ex. E.

Tokai to the United States sufficient to confer personal jurisdiction.

### Discussion

 As a general rule, "the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963) (en banc). Connecticut utilizes a familiar two-step analysis to determine if a court has personal jurisdiction over a party brought before it. The court must first inquire whether, under the facts of the case, the state's long-arm statute may be asserted as a basis for jurisdiction over the defendant. *Frazer v. McGowan,* 198 Conn. 243, 246, 502 A.2d 905 (1986). Once jurisdiction has attached under the long-arm statute, the court must then determine whether the exercise of jurisdiction satisfies the federal constitutional requirements of due process. *Id.* at 246, 502 A.2d 905; *see also Bensmiller v. E.I. Dupont de Nemours & Co.,* 47 F.3d 79, 81 (2d Cir. 1995).

a) Long–Arm Jurisdiction

Both parties appear to agree that jurisdiction, if it lies at all, only can be predicated on the section of the Connecticut long-arm statute providing that a foreign corporation is subject to suit in Connecticut on any cause of action:

> arising ... out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether

or not through the medium of independent contractors or dealers ....

Conn. Gen.Stat. § 33–929(f)(3). The Second Circuit believes that "the main thrust of subdivision (3) was to reach products liability actions," *Buckley v. New York Post Corp.,* 373 F.2d 175, 177 (2d Cir.1967), and the subsection has been used by federal courts on many occasions to find jurisdiction over the ultimate manufacturer of allegedly defective products sold in this state. *See, e.g., In re Connecticut Asbestos Litigation,* 677 F.Supp. 70 (D.Conn. 1986) (Canadian manufacturer of a line of building products containing asbestos was subject to personal jurisdiction in products liability action under subsection (3), because it had a reasonable expectation that its goods would be used in Connecticut); *Ensign–Bickford v. ICI Explosives,* 817 F.Supp. 1018 (D.Conn.1993) (Canadian manufacturer of explosives subject to jurisdiction in Connecticut under same reasoning).

Defendant maintains that long-arm jurisdiction is improper because "Tokai has not produced, manufactured, or distributed goods with the reasonable expectation that such goods were to be used or consumed in the state of Connecticut." Tazuke Aff. ¶ 15. Plaintiff relies on the substantial volume of Aim n' Flame sales in the United States and the fact that Tokai's wholly-owned subsidiary Scripto had the exclusive right to market these lighters nationwide, arguing that these facts are sufficient to demonstrate that Tokai had "every reason to believe that it was initiating an active, well-supported campaign to market its lighters throughout the United States" and that the "control" Tokai asserted over Scripto gave it reason to believe "that lighters would be sold where Tokai desired those lighters to be sold which included Connecticut." Pl. Mem. at 7. However, there is no evidence allowing an inference

that Tokai had or exercised control in any way over the marketing and distribution strategy employed by Scripto, or that Tokai even communicated with Scripto regarding any aspect of its distribution and marketing plans. Tokai's power to select Scripto's president and place executives on its board does not provide sufficient support for the inference of control of Scripto by Tokai that plaintiffs would have this Court draw, and Tokai's mere knowledge of U.S. sales volume is insufficient to fill this gap. While plaintiffs suggest that a much tighter and controlled informal relationship exists between Tokai and Scripto, plaintiffs' discovery has apparently been unsuccessful in penetrating the relationship beyond Tokai's appointment authority over the position of president and certain directorships.

Neither plaintiffs nor defendant has pointed the Court towards any Connecticut precedent addressing whether the long-arm statute reaches a foreign designer of an allegedly defective product that ultimately injures a Connecticut plaintiff. The Connecticut Supreme Court, however, has concluded that Connecticut's long-arm statute stops short of authorizing jurisdiction to the extent permissible under the due process clause. *See Thomason v. Chemical Bank*, 234 Conn. 281, 292, 661 A.2d 595 (1995) ("If the legislature had meant to allow our courts to exercise the full extent of constitutionally permissible long arm jurisdiction, it could have done so explicitly."). A finding that the due process clause of the Constitution prohibits this Court from asserting jurisdiction over Tokai in this case would necessarily determine the conclusion under the long arm statute. The Court accordingly turns to the constitutional analysis as the next step.

b) Due Process

■ Defendant contends that the exercise of personal jurisdiction over it in this case would violate due process because of the absence of any contacts with Connecticut. In determining whether the requisite minimum contacts exist, the Court is to consider "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine*, 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). First, to justify specific jurisdiction the plaintiffs must show that their claims arise out of or relate to the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Defendant does not challenge this prong. The dispute arises over the second prong of the test, which requires the plaintiffs to show that Tokai "purposefully directed" its activities at residents of the forum state, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and that the defendant could reasonably foresee being haled into court there. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The two cornerstones of the "purposeful availment" requirement are voluntariness and foreseeability. "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *see also Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The mere likelihood that a product will find its way into the forum state is insufficient to establish personal jurisdiction there; rather, "the foreseeability that is critical ... is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate

being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559 (automobile purchased in New York from defendant dealer was taken to Oklahoma by consumer; no jurisdiction in Oklahoma).

*Asahi Metal Industry v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), presents the Supreme Court's most recent analysis of personal jurisdiction over manufacturers of component parts in product liability actions. In *Asahi*, a plaintiff injured in a motorcycle accident when the vehicle's tire and tube exploded, brought a product liability action against, *inter alia*, the Taiwanese manufacturer of the tube, who in turn cross-complained against the Japanese manufacturer of the valve stem assembly used in the tube. *Id.* at 105, 107 S.Ct. 1026. Other than manufacturing the valve stem incorporated into the tubes that were ultimately used in California, the Japanese company had no contacts with the forum state. The Supreme Court reversed the California Supreme Court's finding of personal jurisdiction, but what degree of purposeful availment is needed when products are placed in the "stream of commerce" is not clarified by the decision. While eight justices agreed that the exercise of jurisdiction over the valve manufacturer would violate the principles of fair play and substantial justice, they evenly split on the viability of the stream of commerce theory as the sole basis for jurisdiction. A plurality of four justices, led by Justice Brennan, adopted the theory wholeheartedly, and another plurality, led by Justice O'Connor, concluded that mere awareness a product will wind up in a given state is not evidence of a purposeful intent to avail oneself of that state's laws, without "additional conduct" such as designing the product for the forum state or establishing marketing the product through a distributor who

serves as sales agent for that state. *Id.* at 109, 107 S.Ct. 1026.

In the wake of *Asahi*, some courts have explicitly adopted Justice Brennan's view, *see Barone v. Rich Bros. Interstate Display Fireworks*, 25 F.3d 610 (8th Cir.1994), while others have determined to follow Justice O'Connor's stricter "stream of commerce plus" theory, *see Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 683 (1st Cir.1992). Other courts, including the Second Circuit, have avoided a definitive ruling on the issue. In *Kernan v. Kurz-Hastings*, 175 F.3d 236, 243 (2d Cir.1999), the Second Circuit declined to adopt either view, because the conduct in that case met the standard advocated by both Justices Brennan and O'Connor. A Japanese manufacturer of hot stamping presses in that case negotiated an agreement with a Pennsylvania corporation that granted the Pennsylvania corporation "the exclusive right to sell and promote [the manufacturer's] products in North America" and provided for the exchange of information for the purposes of developing new machines and changing the pricing structure. *Id.* at 239. The court concluded that jurisdiction over the Japanese corporation was appropriate, although it "[was] admittedly a close question." *Id.*

Defendant recites its lack of contacts with Connecticut as precluding the exercise of jurisdiction, *see* Tazuke Aff., but plaintiffs characterize defendant's contacts differently, arguing that Tokai did not merely passively release its products into the stream of commerce via its subsidiary; instead, it played an active role in developing a nationwide market for its products by purchasing Scripto and giving it exclusive distribution rights, controlled Scripto through its Board and officer appointments, sold tens of millions of lighters, attended industry meetings in the United States and collaborated with Scripto in

designing a safer lighter. Pl. Mem. at 13. Plaintiffs' theory of Tokai's contacts with and control over Scripto's operations, however, is not supported by their evidence. Significantly, Tokai did not manufacture the final product, only unidentified components, and so did not ship the finished product to Scripto. Further, the record contains no internal memoranda or other communications between Scripto and its corporate parent, such as sales reports or profit statements, which could permit an inference that Tokai was aware of or had some role in the nationwide scope of Scripto's distribution of Aim n' Flames.[3]

It is undisputed that Tokai has no specific connections to the State of Connecticut, and plaintiff conceded at oral argument that if the Court were to accept plaintiff's explanation for why jurisdiction lies in Connecticut, jurisdiction would of necessity lie in every state in the nation. Such "national contacts" or "aggregate contacts" have been recognized as a basis for jurisdiction, when they have been recognized at all, only in federal question cases involving statutes authorizing nationwide service of process. *See, e.g., Handley v. Indiana & Michigan Elec. Co.*, 732 F.2d 1265 (6th Cir.1984); *see also Hallwood Realty Partners v. Gotham Partners*, 104 F.Supp.2d 279 (S.D.N.Y.2000) (applying "national contacts" test to assert jurisdiction over California corporation Se-

curities Exchange Act case, but noting split in cases finding that Fifth Amendment's limitations on the exercise of personal jurisdiction in federal question cases is coextensive with Fourteenth Amendment and requirements of *International Shoe* ). The Court agrees with defendant that in the absence of any congressional enactment providing for national jurisdiction over foreign corporations for products liability purposes, the focus must remain on the defendant's contacts with the forum state.

While plaintiffs purport not to rely on aggregate contacts as the source for jurisdiction here, their theory—that establishing a national distribution system through a wholly-owned subsidiary constitutes purposeful availment—is really just that. However, mere ownership by a parent corporation of a subsidiary corporation present in the forum state generally will not subject the parent to personal jurisdiction in that forum. *See, e.g., Miller v. Honda Motor Co.*, 779 F.2d 769, 772 (1st Cir.1985). This rule applies even when the separation between parent and subsidiary is "merely formal," as long as it is "real." *See generally Cannon Manufacturing Co. v. Cudahy Co.*, 267 U.S. 333, 335–37, 45 S.Ct. 250, 69 L.Ed. 634 (1925); Wright & Miller, Federal Practice & Procedure, § 1069, p. 256 ("if the subsidiary's presence in the state is primarily for the pur-

---

**3.** Such evidence could establish the degree of interconnection between a foreign parent and U.S. subsidiary sufficient to support the exercise of jurisdiction over the parent corporation. In *Ensign–Bickford v. ICI Explosives,* 817 F.Supp. 1018 (D.Conn.1993), in addition to selling approximately 100,000 devices to the U.S. subsidiary for distribution in the United States, the parent corporation seeking dismissal had "closely cooperated" with its U.S. subsidiary in introducing the product to the U.S. market, and plaintiff presented evidence that the parent's employees had participated in marketing teams, led the develop-

ment of market plans, attended conventions at which they met "quite a few" U.S. distributors, and discussed "whether we were selling product in Connecticut" with an employee of the subsidiary. *Id.* at 1027–28. Then–District Judge Cabranes further found it "arguable—perhaps likely—that [the corporate parent] intentionally organized its own internal structure and policies in a way that was calculated to ensure that [the corporate parent] would remain beyond the reach of the United States courts." *Id.* at 1030. No such connections or purposes are shown in the instant case.

pose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary").

Despite plaintiffs' argument that *Kurz–Hastings* compels the conclusion that jurisdiction lies in this case, the Court finds it distinguishable on several grounds. In contrast to this case, *Kurz–Hastings* involved a manufacturer who shipped the injury-causing product directly to its United States distributor, and an express contract outlined the terms of the parties' relationship. Here, no written agreement exists. Further, Tokai is not the manufacturer of the subject product, and there is no indication that the component parts it manufactures are alleged to have malfunctioned or otherwise caused plaintiffs' disastrous injuries. These differences sufficiently distinguish *Kurz–Hastings*, admittedly a close case in its own regard.

▮ The Court concludes that this record does not constitute a prima facie showing of jurisdiction over Tokai, because it does not allow the inference that Tokai injected the Aim n' Flame lighter into the stream of commerce, or engaged in any of the additional factors necessary under Justice O'Connor's "stream of commerce plus" theory. Tokai has not manufactured the product since 1991; in fact, it appears that the manufacturing facilities in Mexico deal with Scripto, not the corporate parent, Tokai. The mere fact that Tokai is designer of the subject product is insufficient to create personal jurisdiction; accepting such a theory would allow for the exercise of jurisdiction over every basement inventor in the world, simply because a product he or she conceived was manufactured and ended up in Connecticut. In the absence of any contract spelling out the terms of their arrangement, as was the case in *Kurz–Hastings*, or any other evidence describing the nature of any operational relationship between Scripto and Tokai, plaintiff's record is insufficient to allow the constitutional exercise of jurisdiction over Tokai.[4]

Although the evolving realities of multinational commerce and communication technology developments in the Twenty–First century may well result in increasing circumstances where foreign corporations can be found to have reason to anticipate being subject to jurisdiction in every state, the Court concludes that the record before it in this case is insufficient to support the constitutional exercise of jurisdiction over Tokai. Were the rhetoric in plaintiff's brief—that Tokai "sought to establish itself as a player in the national market for utility lighters, and played an active role in pursing that goal" and that Tokai "created and controlled an enormous distribution chain in the U.S. and Connecticut"—borne out by the evidence submitted in opposition to the motion to dismiss, the result in this case might well have been different. Being haled into court in each of the United States might be considered a fair price to pay for directed involvement in international commerce, and due process would perhaps not be abridged by the Court's assertion of jurisdiction over Tokai in such circumstances. *See Bulova Watch Co. v. K. Hattori & Co.*, 508 F.Supp. 1322, 1334 (E.D.N.Y.1981) (noting that while "litigation in a foreign jurisdiction is a burdensome inconvenience for any company, in the appropriate case, where the defendant's activities abroad, either directly or through an agent, become widespread and

---

4. As the Court has determined that Tokai lacks the minimum contacts with Connecticut necessary to allow the exercise of jurisdiction, it need not consider the five "reasonableness" factors set out in *Asahi*.

energetic ... such litigation is part of the price which may be properly demanded of those who extensively engage in international trade."). However, there is no evidence that Tokai is indeed the "international player" plaintiff describes. On the facts before it, the Court can reach no conclusion but that the plaintiffs have failed to meet their burden of demonstrating the existence of personal jurisdiction over Tokai.

### Conclusion

For the reasons discussed above, defendant Tokai Corporation's Motion to Dismiss (Doc. # 10) is GRANTED.

IT IS SO ORDERED.