SIXTH DIVISION
May 26, 2006

Nos. 1-04-2609 and 1-04-2736 (consolidated)

| | | |
|---|---|---|
| HELEN M. SAIA, Individually, and as | ) | Appeal from the |
| Special Administrator of the Estate of | ) | Circuit Court of |
| Alexis K. Saia, a Deceased Minor, | ) | Cook County |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCRIPTO-TOKAI CORPORATION, a California | ) | |
| Corporation, K MART CORPORATION, a | ) | |
| Michigan Corporation, and PARTNERSHIP | ) | |
| CONCEPTS REALTY MANAGEMENT, INC., an | ) | |
| Illinois Corporation, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TOKAI CORPORATION, a Japanese | ) | |
| Corporation, | ) | Honorable |
| | ) | Michael J. Hogan, |
| Defendant-Appellee. | ) | Judge Presiding |

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Tokai, a Japanese corporation, designed a lighter and gave its subsidiary, Scripto-Tokai (Scripto), exclusive right to distribute the lighter in the United States. Helen Saia, a consumer who bought one of the lighters in Illinois, claims, in this lawsuit, that Tokai designed the lighter negligently and the design caused the death of her child. Scripto admits that Illinois courts have jurisdiction over it, but Scripto argues that it has no liability for negligent design because it did not design the lighter. Tokai moved to dismiss the lawsuit for lack

of personal jurisdiction. The trial court held that due process did not permit the exercise of jurisdiction over Tokai because it did not conduct any business in Illinois. Saia appeals.

This case presents the question of whether a foreign corporation that designs a product can immunize itself from liability for negligent design by marketing the product through a subsidiary. We hold that it cannot. We find that the use of a subsidiary to introduce the product it designed to Illinois markets suffices for the exercise of personal jurisdiction over the foreign corporation for an action for negligent design.

BACKGROUND

On June 3, 1999, an apartment building in Roselle, Illinois, caught fire. Alexis Saia died a few months later. Her mother, Helen Saia, special administrator of Alexis's estate, sued Tokai, Scripto, and others, alleging that Helen's three-year-old son got his hands on an Aim 'n Flame II lighting rod while the family slept on June 3, 1999. A flame from that rod started the fire that led to Alexis's death. The family bought the lighting rod at a K mart in Illinois.

Helen sought to recover on theories of strict products liability and negligent design. Scripto admitted in its answer that it distributed the Aim 'n Flame II lighting rod, but it claimed that Tokai, not Scripto, designed the rod.

Tokai moved to dismiss the complaint for lack of personal jurisdiction. Tokai's director swore in an affidavit that Tokai

had no offices, no mailing address and no local telephone listing in Illinois, it never had any employees in Illinois, and it transacted no business in Illinois. Tokai never sent its officers into Illinois to conduct any business, it did not directly distribute its products in Illinois, and it "does not directly profit from the sale or marketing of products sold in the state of Illinois." However, the director admitted that Tokai owned all stock of its subsidiary, Scripto.

A manager for Tokai admitted that Tokai designed the Aim 'n Flame II lighting rod. Tokai made Scripto its exclusive distributor in the United States for its lighting rods and other lighters, but "this distributor arrangement has not been reduced to a formal agreement." Scripto's subsidiary, JMP Mexico, manufactured the lighting rods. Tokai's manager swore that "Tokai does not control the marketing or distribution of lighting rods *** distributed by Scripto." An officer of Scripto similarly said in an affidavit that "Tokai has never directed or requested Scripto to market or sell utility lighters *** in the state of Illinois." Tokai manufactured some of the component parts of the Aim 'n Flame II lighting rods. The manager swore that "Tokai is not involved in decisions concerning how [component] parts are used by Tokai's customers," including JMP Mexico.

The court permitted the parties to conduct discovery limited to the issue of personal jurisdiction over Tokai. In its

verified answer to special interrogatories, Scripto said it distributed Aim 'n Flame lighting rods to some of its customers, including K mart, and the customers resold the lighting rods to consumers in Illinois.  Scripto refused to disclose the names of other customers that may have resold the lighting rods in Illinois, and it refused to divulge the number of units it shipped or any terms of its contracts.  Scripto and Tokai both claimed they were "unaware of the precise numbers of [Aim 'n Flame II lighting rods] re-sold by its customers in the State of Illinois."

In an interrogatory Helen sought information concerning "the amount of revenue received by TOKAI *** as a result of the sale of any product, including, but not limited to, *** Aim N Flame Lighters within the State of Illinois since 1996."  Tokai answered: "[A]s Tokai reasonably construes this Interrogatory, Tokai responds as follows: None with respect to lighting rods." But Tokai admitted that its agreement with Scripto permitted sales of its lighting rods in Illinois.

At oral argument the trial judge challenged Tokai's assertion that it did not directly profit from sales of Aim 'n Flame II lighting rods in Illinois.  Tokai's attorney said:

"There's no evidence in this case that Tokai garnered any profit.

* * *

*** Honestly, I don't want to make a

misrepresentation as to the financial setup of if they're compensated for the design or not.  The point is there is no evidence in the record ***.

* * *

    *** Tokai at one point manufactured and distributed in the United States [a different model Aim 'n Flame] utility lighter, so arguably there's a connection with the [other model] utility lighter in the United States.  No such connection exists with the lighter at issue here."

The trial court granted Tokai's motion to dismiss the complaint against Tokai for lack of personal jurisdiction.

ANALYSIS

Tokai argues first that we should ignore all discovery and affirm because the complaint does not state sufficient facts to establish a *prima facie* case for personal jurisdiction.  Tokai did not raise this issue in the trial court.  "Generally, pleading defects must be raised at trial so that they may be remedied; otherwise, the defects are waived."  In re Andrea D., 342 Ill. App. 3d 233, 242 (2003).  If the affidavits, discovery responses and other evidence before the trial court show that Helen could allege grounds for personal jurisdiction, but we find that the complaint does not include such allegations, we must remand to permit Helen to amend the complaint.  See Builders Bank v. Barry Finkel & Associates, 339 Ill. App. 3d 1, 10 (2003).  The

alleged deficiency of the complaint cannot warrant affirmance here.

The court in Gaidar v. Tippecanoe Distribution Service, Inc., 299 Ill. App. 3d 1034 (1998), explained the applicable standard of review. Because the trial court heard no testimony and decided the issue of personal jurisdiction based solely on documents in the record, we review the judgment *de novo*. Gaidar, 299 Ill. App. 3d at 1040. The plaintiff bears the burden of proving a *prima facie* case for jurisdiction. Gaidar, 299 Ill. App. 3d at 1040-41. A defendant's uncontradicted evidence can in some cases defeat jurisdiction. Gaidar, 299 Ill. App. 3d at 1041. If the parties' evidence leaves a material issue of fact whose resolution will determine whether the trial court has personal jurisdiction over the defendant, the trial court must hold an evidentiary hearing concerning jurisdiction. Stein v. Rio Parismina Lodge, 296 Ill. App. 3d 520, 523 (1998). The Illinois long-arm statute now permits the exercise of jurisdiction to the extent due process concerns permit. Kostal v. Pinkus Dermatopathology Laboratory, P.C., 357 Ill. App. 3d 381, 386 (2005). Therefore, we review the record only to determine whether the uncontradicted facts here demonstrate that constitutional due process forbids the exercise of personal jurisdiction over Tokai. Kostal, 357 Ill. App. 3d at 387.

Helen argues that Illinois has jurisdiction over Tokai because Tokai introduced its lighting rods into the stream of

commerce, knowing that its subsidiary would distribute the rods to retailers that would market them in Illinois. Tokai counters first that Helen waived the stream-of-commerce argument by failing to raise it in the trial court. Waiver constrains the parties but not this court. Poullette v. Silverstein, 328 Ill. App. 3d 791, 797 (2002). Moreover, the court should not dismiss the complaint for want of personal jurisdiction if documents in the record can support a finding of jurisdiction. See Bell v. Louisville & Nashville R.R. Co., 106 Ill. 2d 135, 142 (1985).

The court applied the stream-of-commerce theory of jurisdiction in Oswalt v. Scripto, Inc., 616 F.2d 191 (5th Cir. 1980). In that case the plaintiff asked the federal court in Texas to exercise jurisdiction over Tokai-Seiki, a Japanese corporation. Tokai-Seiki manufactured a cigarette lighter and sold it to Scripto, the exclusive distributor for Tokai-Seiki's lighters in the United States. Scripto told Tokai-Seiki of its intention to distribute the lighters to a customer for resale through the customer's national retail outlets. Oswalt, 616 F.2d at 197. The record did not show how many lighters reached Texas. The appellate court held:

"Tokai-Seiki delivered millions of the lighters to Scripto with the understanding that Scripto would be the exclusive distributor for the United States and that Scripto would be selling the lighters to a customer with national retail outlets. There is nothing

in this record to indicate that Tokai-Seiki attempted

in any way to limit the states in which the lighters

could be sold. To the contrary, the record shows that

Tokai-Seiki had every reason to believe its product

would be sold to a nation-wide market, that is, in any

or all states. Moreover, the record shows that Texas

was one of the states in which the lighters were in

fact marketed, the distribution chain including a Texas

wholesaler and a Texas retail store. Given this

distributorship arrangement, Tokai-Seiki's conduct and

connection with Texas are such that it should

reasonably anticipate being haled into court in Texas."

Oswalt, 616 F.2d at 199-200.

The court particularly noted that the exercise of jurisdiction

over Tokai-Seiki comported with the principles our supreme court

stated in Gray v. American Radiator & Standard Sanitary Corp., 22

Ill. 2d 432 (1961). Oswalt, 616 F.2d at 201-02.

In Gray, as in Oswalt and this case, the defendant did not

directly market its product in the state that exercised

jurisdiction, and the plaintiff failed to show the extent of the

defendant's indirect benefit from sales in the forum state. The

defendant in Gray manufactured a safety valve that a manufacturer

in another state incorporated into a water heater eventually

installed in Illinois. The plaintiff alleged that she suffered

injury when the heater exploded due to negligent construction of

the safety valve.  The court said:

> "[T]he defendant's only contact with this State is found in the fact that a product manufactured in Ohio was incorporated, in Pennsylvania, into a hot water heater which in the course of commerce was sold to an Illinois consumer. The record fails to disclose whether defendant has done any other business in Illinois, either directly or indirectly ***. We do not think, however, that doing a given volume of business is the only way in which a nonresident can form the required connection with this State. ***
>
> * * *
>
> *** [T]he relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum. ***
>
> * * *
>
> In the case at bar defendant does not claim that the present use of its product in Illinois is an isolated instance. While the record does not disclose the volume of [the defendant's] business or the territory in which appliances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and

consumption in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.

With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here." Gray, 22 Ill. 2d at 438-42.

Cons. 1-04-2609 and 1-04-2736

The court in Wessinger v. Vetter Corp., 685 F. Supp. 769 (D. Kan. 1987), applied similar principles to a product's designer. In that case the plaintiff alleged that he suffered injury due to the negligent design of a Honda motorcycle. He sued Honda Research & Development Co. (Honda R&D). Honda R&D moved to dismiss for lack of personal jurisdiction. Honda R&D designed the motorcycle at issue, but it did not manufacture or distribute motorcycles. The court said:

> "'While [the defendant] greatly profits from the sale of [its] vehicles in the United States, it claims that it is immune from all jurisdictional claims against it in the United States. The court views this as a company which seeks to reap all of the benefits without incurring the resulting liabilities and costs...
>
> *** Any inconvenience to defendant in defending this lawsuit is clearly outweighed by Kansas' interest in protecting its citizens from injury. The court finds that it would be fundamentally unfair to allow a foreign manufacturer to insulate himself from the jurisdiction of this court by use of an exclusive distributor ***.' [Cunningham v. Subaru of America, Inc., 631 F. Supp. 132,

Cons. 1-04-2609 and 1-04-2736

136 (D. Kan. 1986).]

* * *

First, Honda R & D's design may be likened to a
component of the Honda motorcycle; in fact, it is a
component which controls all other components.
[Citation.]  Viewed as such, the design is a product.

Second, Honda R & D indirectly placed the product
into the stream of commerce. It regularly sold its
designs to its parent, Honda, which manufactured
motorcycles from the designs and sold the motorcycles
to American Honda, another wholly-owned subsidiary,
which distributed the motorcycles throughout the United
States. Given the relationship among the corporations,
Honda R & D undoubtedly knew that the finished products
made from its design would regularly be sold in Kansas.
[Citation.]  Because of the absence of evidence
regarding the issue, we do not here hold that Honda R &
D, Honda, and American Honda are so tightly related
that the subsidiaries are mere alter-egos of the
parent. [Citations.]  Rather, we simply refer to the
relationship to support our conclusion that Honda R & D
knowingly, regularly, and indirectly placed its
component product, the design, into the stream of
commerce.

Third, Honda R & D's product, the design, is an

˘12˘

alleged source of Wessinger's injuries. ***

     In summary, the court *** finds that the interests of Wessinger in obtaining relief and of Kansas in protecting its citizens from injury by inadequately designed products are substantial and outweigh any inconvenience or burden on Honda R & D."  Wessinger, 685 F. Supp. at 776-78.

Here, as in Wessinger, the plaintiff claims that the defendant's negligent design caused the injury.  Tokai, like Honda R&D, seeks to profit from its design through the manufacture and sales, by its subsidiaries, of the products Tokai designs.  Tokai admits that it manufactured some of the component parts of the Aim 'n Flame II lighting rods and then sent those parts to JMP Mexico, the exclusive manufacturer of the lighting rods.  Tokai's subsidiary, Scripto, owns JMP.  Although Tokai claimed that it did not direct JMP in the use of the components Tokai manufactured, Tokai admits that it designed the lighting rod and JMP manufactured it, presumably in accord with Tokai's design.  Scripto then distributed the lighting rods to various customers, including K mart, and some of those customers sold Aim 'n Flame lighting rods in Illinois.

Tokai's officer swore that Tokai did not directly profit from the sales in Illinois.  Tokai claims that on this record, the court cannot conclude that Tokai, the product's designer, profits in any way from the sales of its product in Illinois.

Cons. 1-04-2609 and 1-04-2736

Tokai cites, as support, <u>Savage v. Scripto-Tokai Corp.</u>, 147 F. Supp. 2d 86 (D. Conn. 2001).

In <u>Savage</u> a fire caused by an Aim 'n Flame lighting rod injured the plaintiffs.  The court held:

"Significantly, Tokai did not manufacture the final product, only unidentified components, and so did not ship the finished product to Scripto. Further, the record contains no internal memoranda or other communications between Scripto and its corporate parent, such as sales reports or profit statements, which could permit an inference that Tokai was aware of or had some role in the nationwide scope of Scripto's distribution of Aim n' Flames.

It is undisputed that Tokai has no specific connections to the State of Connecticut ***.

* * *

*** The mere fact that Tokai is designer of the subject product is insufficient to create personal jurisdiction; accepting such a theory would allow for the exercise of jurisdiction over every basement inventor in the world, simply because a product he or she conceived was manufactured and ended up in Connecticut. In the absence of any contract spelling out the terms of their arrangement, *** or any other evidence describing the nature of any operational

˘14˘

relationship between Scripto and Tokai, plaintiff's record is insufficient to allow the constitutional exercise of jurisdiction over Tokai.

*** Were the rhetoric in plaintiff's brief--that Tokai 'sought to establish itself as a player in the national market for utility lighters, and played an active role in pursing that goal' and that Tokai 'created and controlled an enormous distribution chain in the U.S. and Connecticut'--borne out by the evidence submitted in opposition to the motion to dismiss, the result in this case might well have been different. Being haled into court in each of the United States might be considered a fair price to pay for directed involvement in international commerce, and due process would perhaps not be abridged by the Court's assertion of jurisdiction over Tokai in such circumstances. [Citation.] However, there is no evidence that Tokai is indeed the 'international player' plaintiff describes. On the facts before it, the Court can reach no conclusion but that the plaintiffs have failed to meet their burden of demonstrating the existence of personal jurisdiction over Tokai." Savage, 147 F. Supp. 2d at 93-95.

We disagree. Under the reasoning of Gray and Oswalt, where the defendant does not claim that the use in Illinois is an

isolated instance, "it is a reasonable inference that its commercial transactions, like those of other [product designers], result in substantial use and consumption in this State." Gray, 22 Ill. 2d at 442. Since Tokai owns all shares of the distributor, Scripto, and Scripto owns the manufacturer, Tokai obtains all profits from the manufacture and sale in this state of the product it designed. We find the record sufficient to support the conclusion that Tokai obtained considerable indirect benefit from the profits its wholly owned subsidiary earns from sales in Illinois of lighting rods Tokai designed.

Tokai argues that Illinois has no interest in jurisdiction over Tokai because Scripto has submitted to the jurisdiction of Illinois courts, and it has sufficient insurance coverage to compensate Helen. In Samuels v. BMW of North America, Inc., 554 F. Supp. 1191 (E.D. Tex. 1983), the court found that it lacked jurisdiction over the foreign manufacturer of the allegedly defective car, because the court had jurisdiction over the domestic distributor of the car. But in that case the distributor gave the plaintiff a warranty covering the automobile, and the plaintiff presented no issue the parties could not fully litigate in the lawsuit against the distributor.

Here, Helen has a claim based on the lighting rod's negligent design, and Scripto has answered that it did not design the lighting rod and it has not in any way accepted responsibility for the alleged negligence in that design. Helen

˘16˘

may recover in strict liability for all her loss, but she also may fail to recover under the strict liability counts.  Defenses that do not apply to negligent design cases may defeat cases in strict liability.  See Blue v. Environmental Engineering, Inc., 215 Ill. 2d 78, 95-97 (2005).  If Scripto succeeds in persuading the trial court that it has no responsibility for the negligent design, Helen may not have any domestic forum for litigating her negligence claim.  Illinois has an interest in providing its citizens effective redress for negligent design of products distributed here, and Illinois cannot protect this interest unless it exercises jurisdiction over foreign designers that use subsidiaries to distribute the products they design.

Following Gray, Oswalt and Wessinger, we find that Tokai has sufficient contacts with Illinois for the court to exercise jurisdiction over Tokai for purposes of litigating Helen's claim that Tokai negligently designed the Aim 'n Flame II lighting rods.  Accordingly, we reverse the judgment of the trial court and remand for further proceedings on the cause of action.

Reversed and remanded.

TULLY and FITZGERALD-SMITH, JJ., concur.