

# SUPREME COURT OF MISSOURI
## en banc

ISSIAH ANDRA, )
                                )
            Appellant, )
                                )
v. )      No.  SC93984
                                )
LEFT GATE PROPERTY )
HOLDING, INC., )
                                )
            Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable Barbara W. Wallace, Judge

*Opinion issued February 24, 2015*

Issiah Andra, a Missouri resident, appeals the circuit court's dismissal of his petition against Texas-based Left Gate Property Holding, Inc., for lack of personal jurisdiction.  Mr. Andra contends that the trial court erred in dismissing the petition because Left Gate's conduct falls under Missouri's long-arm statute and Missouri's exercise of personal jurisdiction satisfies the due process clause of the Fourteenth Amendment of the United States Constitution.

Mr. Andra maintains that Missouri has jurisdiction over Left Gate because:  (1) the nature, quality, and quantity of Left Gate's contacts with Missouri constitute sufficient minimum contacts to establish personal jurisdiction under a traditional analysis of specific personal jurisdiction; (2) Left Gate engaged in sufficient interactive contact with customers through the eBay auction website to establish personal jurisdiction under the

specific personal jurisdiction test in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997); and, (3) Left Gate had substantial systematic and continuous contacts in Missouri to establish personal jurisdiction under an analysis of general jurisdiction.

The parties do not dispute that Left Gate's conduct satisfies Missouri's long-arm statute. This Court finds that Left Gate purposefully availed itself of the privilege of doing business in Missouri. Left Gates's substantial, long-term business transactions in Missouri as well as its alleged fraudulent misrepresentations, telephone and mail correspondence, and continuing warranty obligations directed toward a Missouri resident establish sufficient minimum contacts with Missouri to satisfy the due process clause of the Fourteenth Amendment. Accordingly, Missouri may assert personal jurisdiction over Left Gate. The circuit court's judgment is reversed, and the case is remanded.

### Factual and Procedural Background

On July 15, 2011, Missouri resident Issiah Andra used the eBay auction website to purchase a 2007 GMC Yukon XL Denali from Left Gate Property Holding, Inc., for the total sale price of $32,639.20.[1] Left Gate is headquartered in Texas and has no physical offices, facilities or employees in Missouri. It is the largest eBay vehicle dealership in the world. The dealership operates out of a 17-acre, 50,000-square-foot facility in

---

[1] Left Gate's trade name is Texas Direct Auto.

Stafford, Texas. At any given time, Left Gate has between 1,800 and 2,100 vehicles listed on eBay and is designated as a top-rated seller on eBay.[2]

Left Gate's eBay sales are a substantial portion of its total business, with 35 to 40 percent of its vehicle sales beginning on eBay.[3] To achieve these sales, Left Gate's eBay website targets a national market. Left Gate does not restrict sales to any state or region. As expressly stated on Left Gate's eBay website, it will deliver a car bought on eBay anywhere within the United States. Left Gate does not, however, use any other form of advertising in Missouri to drive potential customers to its eBay website or its specific eBay auctions. While the exact number or total revenue from cars sold to Missouri residents is not known, Missouri vehicle sales account for approximately 0.86 percent of Left Gate's *total* transactions.

As one of Left Gate's many out-of-state purchasers, Mr. Andra used the customary process to purchase one of Left Gate's vehicles listed on eBay. On July 15, 2011, Mr. Andra reviewed information about the vehicle on eBay from his computer in Humansville. The eBay listing indicated that the vehicle was in excellent condition, had a rear camera, overhead console, rear door pockets, leather and wood steering trim, in-dash six-CD player, remote start, multi-level heated seats, functional navigation system, functional DVD overhead screen, and no history of accidents. The purchase price of the vehicle included one or more warranties. Like many of Left Gate's eBay customers, Mr.

---

[2] EBay awards this designation to sellers based on the seller's maintenance of high feedback ratings and the number of items listed and sold.

[3] Approximately 25 to 30 percent of Left Gate's total sales are from Internet sales that do not begin on eBay. Left Gate's remaining sales of approximately 30 percent are purchases at its dealership in Texas.

Andra agreed to purchase the vehicle by clicking eBay's "Buy It Now" option before speaking to a Left Gate representative.

On the same day he completed his purchase of the vehicle, Mr. Andra spoke on the telephone to a Left Gate employee in Texas who represented that the vehicle was in excellent condition and had received only minor repairs. Soon thereafter, Left Gate mailed the motor vehicle retail installment sales contract[4] and the required federal buyer's guide to Mr. Andra's physical address in Missouri.[5] The purchase order contained a forum selection clause requiring both parties to adjudicate claims in Ft. Bend County, Texas.[6] On July 18, 2011, Mr. Andra signed the sales contract and buyer's guide at his home in Missouri. Left Gate then called Mr. Andra at his Missouri telephone number to arrange to have the vehicle transported to Missouri, quoting Mr. Andra a price for this service. On July 21, 2011, Left Gate called Mr. Andra to tell him that it had found a transporter and that the vehicle was ready to be transported to Missouri. Mr. Andra received delivery of the vehicle in Missouri on July 28, 2011, and registered the car in Missouri.

Mr. Andra alleges in his petition that the vehicle was delivered missing many of the represented features. Mr. Andra alleges the vehicle did not have a rear camera,

---

[4] The parties also refer to this document as the vehicle's purchase order.

[5] Left Gate also typically requests that a consumer send a copy of his or her driver's license and proof of automobile insurance. It is not in the record whether Left Gate requested these documents from Mr. Andra or whether Mr. Andra sent them.

[6] In its December 5, 2011, motion to dismiss for lack of personal jurisdiction and/or subject matter jurisdiction, Left Gate also argued the enforceability of the forum selection clause. The circuit court's judgment dismissed for lack of personal jurisdiction but did not rule on the enforceability of the forum selection clause. As such, the enforceability of the forum selection clause is not at issue before this Court.

4

overhead console, rear door pockets, leather and wood steering trim, in-dash six-CD player or multi-level heated rear seats. Moreover, despite representations that the vehicle was in excellent condition, Mr. Andra contends the interior cloth was water stained; the dash was scratched; the remote start, heated seats, windshield fluid sprayer, moon roof, and DVD overhead screen did not functioned properly; and the navigational system did not work. Mr. Andra further contends that the vehicle was delivered with mechanical problems, body work problems, and with various dash warning lights illuminated. Additional problems included that the fuel pump made loud noises; the engine was in poor condition; the vehicle made loud noises when changing gears; the upper and lower ball joints were in bad condition; the rack assembly needed to be replaced; the oil pan skid/splash plate was missing; the front wheel hubs popped; the frame was dented; and the service engine light, the service traction control light, and service stabilitrak light were all illuminated upon delivery. Last, despite representations that the vehicle had no history of accidents, the vehicle purportedly had been involved in an accident in 2009.

On July 29, 2011, Mr. Andra contacted Left Gate about these problems. Left Gate told Mr. Andra it would cover the cost of the repairs. A Missouri GMC dealer attempted to repair the vehicle between July 30, 2011, and August 12, 2011. Due to the vehicle subsequently failing a Missouri inspection, the car underwent three additional repairs on August 25, 2011, September 1, 2011, and September 23, 2011. Left Gate again stated it would cover the costs of these additional repairs, as well as associated towing, taxi, and car rental costs. Left Gate subsequently refused to pay for any of the repairs.

5

On October 26, 2011, Mr. Andra filed suit in the St. Louis County circuit court against Left Gate. He alleged negligent misrepresentation, negligence per se, and violations of the Missouri Merchandising Practices Act (MMPA), which prohibits:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . .
>
> in or from the state of Missouri[.]

Section 407.020.1, RSMo Supp. 2008. He also claimed a violation of the Magnuson-Moss Federal Trade Commission Act. Left Gate filed a motion to dismiss for lack of personal jurisdiction, which the circuit court granted. In support of its motion to dismiss, Left Gate attached the deposition of Ed Williams, Left Gate's corporate representative. Mr. Williams testified about Left Gate's customary business practices. Mr. Williams' deposition does not contain any facts specific to Left Gate's transaction with Mr. Andra. In his response to Left Gate's motion to dismiss, Mr. Andra submitted his own affidavit. Mr. Andra's affidavit stated that he was a Missouri resident and that he had purchased the vehicle from eBay from his computer in Missouri. Mr. Andra further stated that Left Gate had shipped the vehicle to Missouri, that the vehicle had subsequently been repaired in Missouri, and that his communications with Left Gate regarding these repairs had been made from Missouri. A hearing was held October 26, 2012. Citing *Sayeedi v. Walser*, 835 N.Y.S.2d 840, 844-46 (N.Y. Civ. Ct. 2007) as its sole authority, the circuit court held

6

that "an online auction process such as eBay does not rise to the level of purposeful conduct necessary to assert specific personal jurisdiction."[7]

Mr. Andra appeals. Mr. Andra asserts that the circuit court erred in dismissing his petition for lack of personal jurisdiction over Left Gate. Mr. Andra claims that Left Gate has sufficient minimum contacts with Missouri to be subject to personal jurisdiction in Missouri in accordance with the due process clause of the Fourteenth Amendment of the United States Constitution because Left Gate purposefully availed itself of doing business in Missouri by: (1) offering its vehicles for sale on eBay with the knowledge that Missouri residents would buy a percentage of the vehicles; (2) making fraudulent representations to Mr. Andra regarding the features and condition of the vehicle; (3) contacting Mr. Andra in Missouri to further the purchase and shipment of the vehicle; and (4) promising to pay for needed repairs under the vehicle's warranty with knowledge that the repairs would be made in Missouri and would create continuing obligations with Missouri. After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art V, § 10.

## Standard of Review

A trial court's dismissal of a case for lack of personal jurisdiction presents a question of law to be reviewed *de novo*. *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 231 (Mo. banc 2010). A plaintiff has the burden to establish that a "defendant's contacts with the forum state were sufficient." *Angoff v. Marion A. Allen,*

_____

[7] On January 24, 2013, the circuit court corrected its initial order to include the word "judgment" by an order nunc pro tunc, presumably to make the decision final and appealable.

7

*Inc.*, 39 S.W.3d 483, 486 (Mo. banc 2001).  A reviewing court will take the allegations of the pleadings as true to determine whether they establish facts adequate to subject the defendant to jurisdiction in the forum state.  *Id.* at 487.

When the motion to dismiss for lack of personal jurisdiction is based on facts not appearing in the record, a court may also consider affidavits and depositions properly filed in support of the motion to dismiss.  *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 3 n.3 (Mo. banc 1997); *see also* Rule 55.28.  Such consideration "does not serve to convert the motion to dismiss into a motion for summary judgment" as "the trial court's inquiry is limited to an examination of the petition on its face and the supporting affidavits to determine the limited question of personal jurisdiction."  *Chromalloy*, 955 S.W.2d at 3 n.3.  The merits of the underlying case are not considered.  *Id.*  "The circuit court can believe or disbelieve any statement in such affidavits, and factual determinations are within the sole discretion of the circuit court."  *Peoples Bank v. Frazee*, 318 S.W.3d 121, 130 (Mo. banc 2010).   Upon review, this Court must "affirm the trial court's ruling regarding jurisdiction" when the properly filed affidavits and depositions "show [defendants] did not commit any act sufficient to invoke" personal jurisdiction.   *Chromalloy*, 955 S.W.2d at 4 (internal citation omitted).   But "the sufficiency of the evidence to make a prima facie showing that the trial court may exercise personal jurisdiction is a question of law" to be reviewed *de novo* on appeal.  *Bryant,* 310 S.W.3d at 231 (internal quotations and citation omitted).  Review of the evidence must be on a case-by-case basis that cannot be "simply mechanical or quantitative" but instead "must depend rather upon the quality and nature of the

8

activity[.]" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945); *see also Peoples Bank*, 318 S.W.3d at 130.

## Missouri's Personal Jurisdiction Standard

Missouri courts employ a two-prong test to evaluate personal jurisdiction over nonresident defendants. First, the defendant's conduct must fall within Missouri's long-arm statute, section 506.500.[8] *Bryant*, 310 S.W.3d at 231. Second, the defendant must have sufficient minimum contacts with Missouri to satisfy due process. *Id.* Whether a sale between a Missouri buyer and an out-of-state corporation for an item listed on the eBay auction website provides sufficient minimum contacts to support the exercise of personal jurisdiction by a Missouri court is a matter of first impression for this Court.

## Left Gate's Conduct Falls within Missouri's Long-Arm Statute

Missouri's long-arm statute provides in relevant part that:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

   (1) The transaction of any business within this state;
   (2) The making of any contract within this state;
   (3) The commission of a tortious act within this state[.]

Section 506.500. Section 506.500 "is construed to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process clause." *Bryant*, 310 S.W.3d at 232. Mr. Andra contends that Left Gate's conduct falls

---

[8] All statutory references are to RSMo 2000, unless otherwise indicated.

9

within subdivision (1) because Left Gate transacted business in Missouri, within subdivision (2) because Left Gate entered into a contract with Mr. Andra in Missouri when Mr. Andra used the "Buy It Now" feature on eBay, and within subdivision (3) because Left Gate's representations about the vehicle's features and condition yielded consequences in Missouri. Left Gate does not dispute that its conducts falls within Missouri's long-arm statute. Additionally, fraudulent acts that create consequences in the forum state fall under section 506.500(3). *Bryant*, 310 S.W. at 232. Mr. Andra's allegations of Left Gate's misrepresentations of the features and condition of the vehicle, which caused Mr. Andra to repair the car in Missouri, are sufficient to place Left Gate's conduct within Missouri's long-arm statute.

**Sufficient Minimum Contacts to Satisfy Due Process**

Missouri's long-arm statute expands a court's jurisdictional reach only to the extent allowed by the due process clause of the Fourteenth Amendment of the United States Constitution. Due process requires that, absent a traditional territorial basis such as a defendant's physical presence in the forum state, a defendant must have sufficient minimum contacts with the forum state so as not to "'offend[] traditional notions of fair play and substantial justice.'" *Bryant*, 310 S.W.3d at 232 (quoting *Int'l Shoe*, 326 U.S. at 316). Minimum contacts are evaluated on a case-by-case basis. *Peoples Bank*, 318 S.W.3d at 130. The "exercise of personal jurisdiction over a defendant with minimum contact also must be 'reasonable' in light of the surrounding circumstances of the case." *Id.*; *see also Asahi Metal Indus. Co., v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 113 (1987).

10

To evaluate whether a defendant's contact with the forum state satisfies due process, the court considers whether "the defendant purposefully avails itself of the privilege of conducting activities within the forum State" such that the defendant enjoys the protections of state laws and, therefore, should reasonably anticipate being haled into court in that state. *Bryant*, 310 S.W.3d at 232 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The contacts must "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Peoples Bank*, 318 S.W.3d at 129 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). A defendant must have contacts with "the forum State itself," not only "with the persons who reside there." *Walden*, 134 S. Ct. at 1122. A substantial connection with the forum state may occur when a distributor makes an effort to "serve directly or indirectly, the market for its product in other States" and "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980).

This minimum contacts analysis provides a defendant with predictability by "ensur[ing] that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (internal quotations omitted). At the same time, defendants who "purposefully derive benefit from their interstate activities" cannot "escape having to account in other States for consequences that arise proximately from such activities . . . to avoid interstate

11

obligations that have been voluntarily assumed." *Id.* at 473-74 (internal quotations and citations omitted).

Personal jurisdiction analysis begins by looking at "the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct at 1121 (internal quotations and citations omitted). A court has specific jurisdiction over an out-of-state defendant when "a suit aris[es] out of or relate[s] to the defendant's contacts with the forum."[9] *Bryant*, 310 S.W.3d at 232-33. "In some cases, single or isolated acts by a defendant in a state, because of their nature and quality and the circumstances of their commission, provide sufficient minimum contacts to support jurisdiction for liability arising from those acts." *Id.* at 233. In these cases "it usually will not be unfair to subject [a defendant] to the burdens of litigating in another forum for disputes relating to such activity." *Burger King*, 471 U.S. at 474. A court has general jurisdiction over an out-of-state defendant when the defendant's "connections with the state are systematic, continuous and substantial enough to furnish personal jurisdiction over the defendant based on any cause of action – even one that is unrelated to the defendant's contacts with

---

[9] Mr. Andra cites the "five-factor" test commonly used by the court of appeals and Eighth Circuit to analyze minimum contacts. The five factors are: (1) the nature and quality of contacts; (2) the quantity of these contacts; (3) the relationship of the cause of action to those contacts; (4) the interest of Missouri in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *See, e.g., Childers v. Schwartz*, 262 S.W.3d 698, 702 (Mo. App. 2008); *Wells Dairy, Inc. v. Food Movers Int'l., Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). In *Bryant*, this Court declined to adopt this test, noting that, "while courts can use the five-factor test if it seems useful in a particular case," this Court never has required nor utilized the test. 310 S.W.3d at 233 n.4. This Court again affirms that the five-factor test is not required and emphasizes that a personal jurisdiction inquiry must not be mechanical. *See Int'l Shoe*, 326 U.S. at 319.

the forum." *Bryant*, 310 S.W.3d at 232. *See also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 414 n.9 (1984).

The above standards for specific and general jurisdiction arose in the context of increasing commercial interdependence among states and changes in transportation and communication such that "a substantial amount of business [was] transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King*, 471 U.S. at 476; *see also World-Wide Volkswagen*, 444 U.S. at 294 (citing *Hanson v. Denckla*, 357 U.S. at 250-251). Similarly, courts have recently had to address whether contacts made solely through the Internet are sufficient for a state to assert personal jurisdiction. *See Zippo Mfg.*, 952 F. Supp. at 1123-24; *see also Lakin v. Prudential Secs., Inc.*, 348 F.3d 704, 711 (8th Cir. 2003).

Though the law for personal jurisdiction based solely on Internet use is still developing, the *Zippo* test has been adopted by several jurisdictions, including the Eighth Circuit. The *Zippo* test determines whether personal jurisdiction can be asserted based on "the level of interactivity and commercial nature of the exchange of information that occurs on [a] Web site." *Zippo*, 952 F. Supp. at 1124. The *Zippo* test creates a sliding scale to assess whether personal jurisdiction is constitutional when a defendant's contact with the forum state is solely through the Internet. *Zippo*, 952 F. Supp. at 1124. Personal jurisdiction is proper when "a defendant clearly does business over the Internet" by "enter[ing] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet[.]" *Id.* Personal

13

jurisdiction is possible, but not certain, in the middle ground of interactive websites "where a user can exchange information with the host computer." *Id.* In these cases, the level of interactivity must be examined before a court may assert personal jurisdiction. *Id.* Personal jurisdiction is not proper for passive websites "that do[] little more than make information available to those who are interested in it[.]" *Id.*

Missouri has yet to adopt the *Zippo* test or any other standard to assess personal jurisdiction based solely on Internet contacts and need not make this decision today. Unlike the plaintiffs in *Zippo* and similar cases, a substantial number of the contacts between Mr. Andra and Left Gate exist outside of the Internet and within the traditional realm of mail and telephone communications. As such, this Court will use a traditional minimum contacts analysis to determine whether Missouri can assert personal jurisdiction over Left Gate.

Mr. Andra asserts that Missouri has specific jurisdiction over Left Gate because Left Gate: (1) offered the item for sale on eBay with the intent that Mr. Andra would be able to purchase the vehicle from Missouri; (2) made verbal representations about the features and condition of the vehicle during a call Mr. Andra placed from Missouri; (3) sent paperwork, including the sales contract, to Missouri; (4) had Mr. Andra sign the contract in Missouri; (5) called Mr. Andra in Missouri to arrange shipping of the car to Missouri; (6) delivered the car to Missouri; (7) spoke on the telephone with Mr. Andra in Missouri to arrange for the vehicle's delivery to Missouri; (8) issued one or more warranties to Mr. Andra; and (9) promised to pay for repairs under the vehicle's warranty, knowing the repairs would be made in Missouri.

14

Left Gate contends that it did not purposefully avail itself of the privilege of doing business in Missouri but only "placed a vehicle for sale on eBay" without any "control over eBay's marketing or the commercial exchange of information eBay conducted with potential bidders." Left Gate asserts that it did not intentionally solicit sales from Missouri residents because it "had no control over the ultimate purchaser of the vehicle" and had "no control over the location of [the highest] bidder." Instead, Left Gate argues that Mr. Andra acted unilaterally in initiating the contact with Left Gate and choosing to repair the vehicle in Missouri. Though Left Gate acknowledges that which party initiates contact is not outcome determinative for personal jurisdiction, Left Gate maintains the post-sale contacts it had with Mr. Andra do not show that it "purposefully availed itself of doing business in Missouri." Moreover, Left Gate asserts that it lacked the "requisite foreseeability" of having to defend a suit in Missouri courts because it included a forum selection clause in the sales contract that required claims to be adjudicated in Ft. Bend County, Texas. The affidavits and depositions filed in support of the motion to dismiss do not contain contested facts. Instead, the parties contest the legal conclusions that flow from the uncontested facts.

### *Purposeful Availment*

Though Left Gate contends that the scale of its commercial activities in Missouri is not very relevant under a specific personal jurisdiction analysis, courts since *International Shoe* have looked at whether a defendant purposefully avails itself of the "privilege of conducting activities within a state" through "systematic and continuous" contacts. *Int'l Shoe*, 326 U.S. at 319-320. Here, Left Gate purposefully availed itself of

15

doing business in Missouri by allowing and promoting business in Missouri over the last five years. Left Gate used eBay as a broad platform to conduct regular, commercial business in Missouri. Contrary to the circuit court's judgment, the court in *Sayeedi* did not hold that eBay transactions can never rise to the level of purposeful conduct necessary to assert specific personal jurisdiction but only that the "usual online auction process" does not. *Sayeedi*, 835 N.Y.S.2d at 845.

The "usual" process is one in which a seller "create[s] a username, post[s] an item for sale on eBay, and ship[s] the item to the highest bidder" without evidence of systematic and continuous contacts or other actions that would show the seller was purposefully availing itself of doing business in the forum state or invoking the protection of the forum state's laws. *Id.* at 843, 845. In such cases, the court found the contacts were random and attenuated because the "eBay seller has no authority over the audience to which the listing of their good(s) are disseminated." *Id.* at 845. Mr. Andra's purchase of a vehicle listed on eBay did not follow the so-called "usual" process described in *Sayeedi*. As an eBay top-rated seller, its sale of a vehicle to Mr. Andra was far from a single, isolated incident. By using eBay to advertise globally, Left Gate consciously transmitted advertising information to all Internet users, including many potential Missouri customers. *See Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328, 1333 (E.D. Mo. 1996); *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (describing eBay as a website used to market vehicles).

Though Left Gate did not single out Missouri residents for sales, 0.86 percent of its business per year – accounting for a substantial number of sales – was derived from

16

sales with Missouri residents. By advertising that it would ship vehicles anywhere in the United States, Left Gate knowingly stood ready and willing to do business with Missouri residents, even if it did not expressly state that it wanted to do business with Missouri residents. *See Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (personal jurisdiction proper when defendant stated it would ship a vehicle to any state but New York). Had Left Gate wished to "alleviate the risk of burdensome litigation" by being subject to a lawsuit in Missouri, Left Gate could have "sever[ed] its connection with the State." *World-Wide Volkswagen*, 444 U.S. at 297. It did not.

As a result, Left Gate's regular eBay transactions with Missouri residents created intentional, substantial connections with Missouri. Much like the shoe seller in *International Shoe*, these transactions resulted "in a large volume of interstate business, in the course of which appellant received the benefits and protections of the laws of the state, including the right to resort to the courts for the enforcement of its rights." *Int'l Shoe*, 326 U.S. at 320; *see also Guffey v. Ostonakulov*, 321 P.3d 971, 979 n.7 (Okla. 2014) (finding personal jurisdiction based, in part, on seller's use of eBay as a primary means to conduct sales). While Left Gate's purposeful availment of the privilege of conducting business in Missouri might in itself be sufficient for Missouri to assert personal jurisdiction over Left Gate, Left Gate reinforced its deliberate affiliation with Missouri by further reaching out to Missouri through its mail and telephone communications with Mr. Andra.

17

### *Intentional and Continuing Contacts*

In addition to promoting large-scale business transactions in Missouri, Left Gate's conduct surrounding the sale of this specific vehicle to a Missouri resident was not unilateral. Left Gate made intentional contacts directed toward Mr. Andra to further the sale of the vehicle, allegedly made fraudulent representations about the features and conditions of the vehicle, and created continuing warranty obligations to Mr. Andra. "[W]ith respect to interstate contractual obligations, [the United States Supreme Court] ha[s] emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."[10] *Burger King*, 471 U.S. at 473 (citing *Travelers Health Ass'n. v. Virginia ex rel. State Corp. Comm'n*, 339 U.S. 643, 647 (1950)).

Even though Mr. Andra initiated the contract for the purchase of the vehicle by clicking the "Buy It Now" button, "the fact that someone else initiated the first contact does not mean that the entire course of conduct is considered unilateral." *Bryant*, 310 S.W.3d at 235. While an Oklahoma court found personal jurisdiction over a defendant

---

[10]  Left Gate's contract with a Missouri resident does not, however, automatically establish minimum contacts with Missouri. *See Peoples Bank*, 318 S.W.3d at 129; *Burger King*, 471 U.S. at 478; *World-Wide Volkswagen*, 444 U.S. at 297-98. Likewise, Left Gate's telephone calls and mailings to the forum state do not automatically establish minimum contacts. *See Mello v. Giliberto*, 73 S.W.3d 669, 678 (Mo. App. 2002) (letters and bills sent from out-of-state medical providers to plaintiff do not establish minimum contacts); *see also Elaine K. v. Augusta Hotel Assocs. Ltd. P'ship*, 850 S.W.2d 376, 379 (Mo. App. 1993) (letter describing terms of contract, brochures, and telephone calls from out-of-state hotelier to plaintiff does not establish minimum contacts).

when the eBay seller reached out to the buyer prior to the execution of the contract, that Mr. Andra accepted Left Gate's eBay offer before having personal contact with Left Gate is not dispositive of whether Missouri has personal jurisdiction over Left Gate. *See Guffey*, 321 P.3d at 974, 979-80. Instead, the contract and communications must be evaluated in light of "contemplated future consequences, as well as the terms of the contract and the parties' course of dealings[.]" *Peoples Bank*, 318 S.W.3d at 130 (internal quotations omitted). For an analysis of personal jurisdiction, the creation of a contract is not viewed as a "final" contact "but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479.

Here, despite Mr. Andra's initiation of the purchase, the terms of the contract could only be realized through Left Gate's establishment of a continuing relationship with Mr. Andra. To complete the sale, Left Gate had to purposefully reach out to Missouri – to mail the purchase order and federal buyer's guide to a Missouri address, receive Mr. Andra's signature on these legal documents from Missouri, and arrange shipping of the vehicle into Missouri. All of these contacts were "made with the intention of . . . furthering the purchase." *Chromalloy*, 955 S.W.2d at 5 (personal jurisdiction found when contacts were purposefully made to initiate or further a purchase). Left Gate's business transactions surrounding the purchase of this particular vehicle were not random, fortuitous or attenuated, but were intentional, requiring significant coordination between Left Gate and Mr. Andra.

19

Mr. Andra also noted that Left Gate made verbal representations about Left Gate's willingness to pay for repairs and honor the vehicle's warranty. These representations and warranties created continuing obligations between Left Gate and Mr. Andra. *See Guffey*, 321 P.3d at 978 (limited warranty on car purchased from eBay created a continuing obligation between non-resident sellers and plaintiff). Though Left Gate maintains that Mr. Andra unilaterally choose to repair the vehicle in Missouri, Left Gate was aware of the vehicle's geographic location, having shipped the vehicle to Missouri just days before. It is, therefore, reasonable to conclude that Left Gate knew the vehicle would be repaired in Missouri.

Moreover, Left Gate's verbal representations over the telephone about the vehicle's features and condition created foreseeable future consequences when the vehicle did not live up to the customer's expectations. A defendant purposely avails itself of the privilege of conducting business in the forum state when it sends fraudulent misrepresentations into the state because the "actual content of communication with [the] forum gives rise to intentional tort causes of action." *Bryant*, 310 S.W.3d at 235 (internal quotation and citations omitted).

In *Bryant*, after a customer initiated contact with an interior designer, the interior designer made telephone calls and sent e-mails into Missouri "with the intent to defraud [the customer] and to conceal the true nature of [the] charges, resulting in harm to [the customer] in Missouri." *Id*. at 229. The customer alleged fraudulent misrepresentation and fraudulent concealment. *Id.* Because the designer was "alleged to have committed a tortious act in Missouri by intentionally and voluntarily sending fraudulent documents

20

into Missouri in an attempt to defraud a Missouri citizen[,]" Missouri could assert personal jurisdiction over the interior designer. *Id.* at 235. Similarly, Left Gate sent fraudulent representations about the condition of the vehicle into Missouri when it spoke to Mr. Andra after Mr. Andra clicked the "Buy It Now" button. Even though Mr. Andra initiated the contact with Left Gate, Left Gate's subsequent representations were made with the alleged intent to defraud a Missouri resident, knowing that the consequences of its fraudulent representations would have a harmful effect in Missouri.

Left Gate's own actions, as described above, created significant ongoing relationships and continuing obligations with Missouri. Left Gate allegedly made fraudulent representations about the features and conditions of the vehicle, communicated with Mr. Andra to effectuate the terms of the contract, and made continuing warranty obligations to Mr. Andra. Left Gate knew that these contacts would have future consequences and continuing effects in Missouri.

### *Being Sued in a Missouri Court Was Foreseeable*

For a court to assert personal jurisdiction over a defendant, a "defendant's conduct and connection with the forum [must be] such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474. Though Left Gate included a forum selection clause in its contract, a forum selection clause does not automatically determine a court's personal jurisdiction over a defendant. *Id.* at 481-82. Instead, by purposefully availing itself of the benefits and protections of the laws of Missouri for a large volume of business transactions, and by creating continuing relationships and obligations in Missouri, it was reasonably foreseeable that Left Gate would be haled into

21

a Missouri court when one of these transactions gave "rise to the liabilities sued on." *Int'l Shoe*, 326 U.S. at 317*; see also World-Wide Volkswagen*, 444 U.S. at 297. A comparison of Left Gate's actions to the actions of the defendant in *World-Wide Volkswagen* best illustrates when a defendant's contacts with the forum state creates a reasonable foreseeability that the defendant will be sued in that state.

In *World-Wide Volkswagen*, a consumer purchased a vehicle while in New York then unilaterally drove the vehicle into Oklahoma. 444 U.S. at 288. The defendant, the seller, did nothing else to avail itself of the Oklahoma market except sell this single, isolated vehicle. *Id*. at 295-97. The United States Supreme Court held that Oklahoma could not assert personal jurisdiction over the seller because, even though it was "foreseeable" that an automobile sold in one state would be subsequently be driven into another state, this foreseeability existed without the defendant initiating any contact with the forum state. *Id.* at 295, 299.

Here, unlike the vehicle distributor in *World-Wide Volkwagen*, Left Gate did not place its vehicle into the stream of commerce with only a vague awareness or foreseeability that the product would enter the forum state through the consumer's unilateral actions to bring the product into the forum state. In contrast, Left Gate, a highly sophisticated seller with a long history of sales to Missouri, advertised its vehicles on eBay with "the expectation that they [would] be purchased in the forum State." *Id.* at 297-98. Left Gate then intentionally reached into Missouri by shipping documents to Mr. Andra in Missouri, telephoning Mr. Andra in Missouri to make representations about

22

the vehicle's features, condition and warranties, and arranging to have the car shipped to Missouri. In a case with similar facts, the eastern district of Michigan has recently noted:

> It should, in the context of these commercial relationships, be no great surprise to sellers – and certainly no unfair burden to them – if, when a commercial transaction formed over and through the internet does not meet a buyer's expectations, they might be called upon to respond in a legal forum in the buyer's home state.

*Dedvukaj*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2006). As such, Left Gate should have reasonably anticipated that it would be haled into court in Missouri. *See Bryant*, 310 S.W.3d at 235-36; *see also World-Wide Volkswagen*, 444 U.S. at 297. Sellers cannot avail themselves of the benefits of doing large-scale commercial business in Missouri and cannot reach out to Missouri to create ongoing relationships and obligations to Missouri residents without accepting the legal responsibilities that accompany these transactions.

The totality of contacts between Left Gate and Missouri are sufficient for Missouri to assert personal jurisdiction over Left Gate as well as satisfy due process and comply with traditional notions of fair play and substantial justice. First, Left Gate purposefully availed itself of doing business in Missouri by allowing and promoting a large volume of business transactions in Missouri for five years, enjoying the benefits and protections of doing business in Missouri. Second, the contacts between Left Gate and Mr. Andra were not unilateral. Left Gate made intentional contacts with Mr. Andra to further the sale of the vehicle. Left Gate sent the required purchase order and federal buyer's guide to Mr. Andra's mailing address in Missouri, required Mr. Andra to sign these documents in Missouri, and called Mr. Andra in Missouri to arrange to have the vehicle shipped to Missouri. Left Gate also made representations to Mr. Andra, and created and affirmed its

23

continuing warranty obligations to Mr. Andra, all while knowing Mr. Andra was a Missouri resident. Lastly, the totality of these contacts made it foreseeable that Left Gate would be haled into court in Missouri if a transaction did not meet the buyer's expectation. *See Dedvukaj*, 447 F. Supp. 2d at 820. Because Mr. Andra's suit alleges negligent misrepresentation and violations of the MMPA, and because Left Gate shipped the vehicle to Missouri and made representations over the telephone to Mr. Andra in Missouri, the suit arises out of Left Gate's contacts with Missouri, and Missouri may assert personal jurisdiction over Left Gate. Left Gate has sufficient minimum contacts with Missouri such that the assertion of personal jurisdiction over it does not offend traditional notions of fair play and substantial justice.

## Exercise of Personal Jurisdiction is Reasonable

Once it has been established that a defendant has sufficient minimum contacts with the forum state, the court must assess the reasonableness of its assertion of personal jurisdiction over a defendant. *Burger King*, 471 U.S. at 476-77. A consideration of the reasonableness of personal jurisdiction "protects the defendant against the burdens of litigating in a distant or inconvenient forum." *World-Wide Volkswagen,* 444 U.S. at 292. Whether the exercise of personal jurisdiction over a defendant with minimum contacts to the forum state is reasonable is based on a consideration of "the burden on the defendant, the forum's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief." *Peoples Bank*, 318 S.W.3d at 129 (internal quotations omitted and citation omitted). Missouri courts have also considered "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and

24

"the shared interest of the several states in furthering fundamental substantive social policies." *State ex rel. Nixon v. Beer Nuts, LTD.*, 29 S.W.3d 828, 835 (Mo. App. 2000); *see also World-Wide Volkswagen*, 444 U.S. at 292.

"A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473. As such, a defendant with minimum contacts to the forum state has the burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. at 477. Jurisdiction is unreasonable if it "make[s] litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id.* at 478 (internal quotations omitted).

Mr. Andra contends that Missouri is the most convenient forum because he is a Missouri resident and the vehicle is registered in Missouri, has been repaired in Missouri, and is currently located in Missouri. Additionally, Mr. Andra asserts that the state of Missouri has "an interest in applying the Merchandising Practices Act in its own court system, because Chapter 407 is paternalistic in nature and carries 'heightened public policy concerns.'" Left Gate contends that the circuit court's dismissal for lack of personal jurisdiction does not prohibit Mr. Andra, a private Missouri resident, from filing an MMPA claim in another forum. As such, Left Gate dismisses the Missouri attorney general's interest in regulating non-residents doing business in Missouri because the attorney general did not initiate the suit. That Mr. Andra *could* bring an MMPA claim in

25

Texas does not negate either his or Missouri's substantial interest in bringing the claim in Missouri.

Though defending itself against a lawsuit in Missouri may be a burden to Left Gate, whose entire physical business operations are in Texas, Left Gate has not alleged that defending the suit in Missouri would place it at a severe disadvantage.[11] Clearly, however, Missouri is the most convenient forum for Mr. Andra given that he lives in Missouri and the vehicle is currently located in Missouri. Moreover, Missouri has expressed its clear intent to ensure the Missouri consumers can adjudicate chapter 407 claims in Missouri courts. *See High Life Sales Co. v. Brown-Forman Corp.*, 823 S.W.2d 493, 498 (Mo. banc 1992); *Whitney v. Alltel Commc'ns, Inc.*, 173 S.W.3d 300, 314 (Mo. App. 2005). In light of Left Gate's minimum contacts with Missouri, and Mr. Andra and the state of Missouri's interest in adjudicating the claims in Missouri, Left Gate has not met its burden to make a compelling case that jurisdiction would be unreasonable. There is nothing unfair in requiring a defendant with minimum contacts in Missouri that has benefited from large-scale commercial transactions in Missouri to defend claims in Missouri that arise from these business transactions. As such, traditional notions of fair play and substantial justice are not offended if Missouri asserts personal jurisdiction over Left Gate.

---

[11] Left Gate's only other argument against the reasonableness of jurisdiction is that to "hold Texas Direct subject to personal jurisdiction in Missouri based on the facts presented by this claim will have a detrimental long-term effect on Missouri residents and businesses." This is not a factor in the assessment of reasonableness. *See Peoples Bank*, 318 S.W.3d at 129; *Beer Nuts*, 29 S.W.3d at 835; *see also World-Wide Volkswagen*, 444 U.S. at 292.

**Conclusion**

Left Gate's conduct in Missouri falls within Missouri's long-arm statute. Additionally, Left Gate has sufficient minimum contacts with Missouri to satisfy the due process clause of the Fourteenth Amendment, and an assertion of jurisdiction is reasonable and does not offend traditional notions of fair play and substantial justice. As such, the trial court erred in granting Left Gate's motion to dismiss for lack of personal jurisdiction. Accordingly, the judgment of the trial court is reversed, and the cause is remanded.

_____
PATRICIA BRECKENRIDGE, JUDGE

All concur.