SYLVIA M. GAIDAR, as Independent Adm'r of the Estate of Mark S. Gaidar, a/k/a Mark S. Rose, Deceased, Plaintiff-Appellant, v. TIPPECANOE DISTRIBUTION SERVICE, INC., Defendants-Appellees.

First District (3rd Division)   No. 1—97—3372

Opinion filed October 28, 1998.

Lowrey & Smerz, Ltd., of Chicago (John J. Lowrey, of counsel), for appellant.

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, James K. Horstman, Alton C. Haynes, and Lloyd E. Williams, Jr., of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:

The determinative issue on appeal is whether the nonresident defendants are subject to the jurisdiction of the Illinois courts either under the doing-business doctrine (735 ILCS 5/2—209(b)(4) (West 1996)) or on the basis that the cause of action arose from the transaction of business in Illinois (735 ILCS 5/2—209(a)(1) (West 1996)).

Plaintiff, Sylvia M. Gaidar, as independent administrator of the

estate of Mark S. Gaidar, also known as Mark S. Rose, deceased (decedent), appeals from the dismissal of her negligence complaint against defendants, Tippecanoe Distribution Service, Inc., and David L. Steele, both Indiana residents, arising out of a collision in Indiana between decedent's car and a Tippecanoe truck driven by Tippecanoe employee Steele, who had been driving the truck earlier that day in Illinois. We affirm the dismissal of Steele as a defendant and reverse the dismissal of Tippecanoe as a defendant.

## FACTS

Plaintiff filed a complaint on May 16, 1996, against defendants alleging that plaintiff was appointed as independent administrator of the estate of Mark S. Gaidar in the circuit court of Will County, Illinois. The complaint did not allege where plaintiff or decedent resided. Plaintiff further alleged that (1) Tippecanoe was a corporation that conducted business in Cook County, Illinois; (2) on October 20, 1995, decedent was driving his car in Indiana, and David A. Steele negligently crashed his tractor trailer truck into the rear of decedent's vehicle; (3) the truck was owned by Tippecanoe, and Steele was acting as Tippecanoe's employee; and (4) decedent was treated at a Chicago hospital and died as a result of the accident. Plaintiff sought compensation for decedent's estate and next of kin.

Defendants filed a special and limited appearance and a motion seeking to quash service and dismiss the cause of action for lack of personal jurisdiction. Defendants filed in support of their motion the affidavit of Steele, who swore that he was a resident of Indiana then and at the time of the occurrence and that, at the time of the accident in Indiana, he was driving for Tippecanoe. Defendants also filed the affidavit of Jeffery Baumgartner, the president and chief executive officer of Tippecanoe.

On March 14, 1997, plaintiff moved, in an initial response to the motion to dismiss, for leave to conduct limited discovery on the issue of jurisdiction. The court granted the request.

Pursuant to the discovery order, the deposition of Baumgartner was taken on May 1, 1997, and defendants filed it in support of their motion to dismiss. He testified that he owned Tippecanoe, which was an interstate motor carrier that transported freight. Tippecanoe was incorporated in Indiana and had an office in Lafayette, Indiana; there were no other offices. Tippecanoe was authorized to handle general commodities in 48 states and had authority to operate trucks in Illinois. The most dominant region for Tippecanoe was the Midwest, including Illinois. Tippecanoe did not advertise for business, but Tippe-

canoe belonged to associations that had directories listing its name. Tippecanoe paid fuel tax only to Indiana, and Indiana sent some of the fuel tax money to Illinois.

Baumgartner further testified that Steele took a trip to Northlake, Illinois, the day of the accident. Steele's log also stated he was in South Holland, Bridgeview, and Beecher, Illinois, that day. Steele made a pick up and possibly made a delivery in Illinois that day. "From time to time," Tippecanoe made pick ups and deliveries in Cicero, Franklin Park, Bedford Park, Alsip, and Chicago, Illinois. "Once in a while," Tippecanoe made pick ups and deliveries in McCook, Illinois. "Fewer than 30 times a year," Tippecanoe went to a company in Alsip, Illinois. Northwestern Salt Company located in the Chicago area also gave Tippecanoe a lot of shipments. Tippecanoe usually delivered loads to the railroad yards and had interchange agreements with three railroads. Tippecanoe would typically pick up loads at the Santa Fe yard or at one of the Chicago & Northwestern yards in the Chicago area. Tippecanoe did not have any "big customers" in Illinois; Tippecanoe had "irregular customers" in Illinois.

Baumgartner further testified that he estimated that, in a typical month in the last three or four years, less than 2% of shipments originating or terminating were for customers in Illinois. The estimate was based on the company's mileage statistics. Less than 10% of the total miles were driven in Illinois; his calculation was based on the mileage that was reported for fuel tax and licensing purposes. (A document prepared for Indiana listed mileage of 195,427 for Illinois for the period from July 1, 1995, through June 30, 1996, and the total miles for that period was noted as being 1,910,454.) Tippecanoe's average revenue per mile was $1.32, but Baumgartner could not estimate the percentage of gross revenues from Illinois trips.

On July 2, 1997, plaintiff filed a motion to strike the affidavit of Baumgartner for failure to meet the requirements of Supreme Court Rule 191. 145 Ill. 2d R. 191. Plaintiff's motion challenged these statements in Baumgartner's affidavit:

> "4. Though Tippecanoe's drivers do utilize roadways within Illinois, less than 10% of the total miles driven on behalf of the company were driven in Illinois. This includes trips where the driver is just passing through Illinois on the way to his destination. Less than 2% of all trips made by Tippecanoe drivers originate or terminate in Illinois."

Also on July 2, 1997, plaintiff filed a response to the motion to dismiss. Among the documents filed by plaintiff in support was the affidavit of Randolph Greune, an attorney who had attended Baumgart-

ner's deposition. He swore that in May 1997 he observed a map of Cook County in the reception area at the Tippecanoe office and that the map circled, in black, towns in Illinois commonly associated with transportation, including Cicero, Franklin Park, Melrose Park, Forest Park, McCook, Bedford Park, Alsip, and two areas in Chicago.

On August 6, 1997, the trial court denied the motion to strike, finding that Baumgartner's deposition "contained facts addressed in affidavit." On that date, the trial court also granted the motion of defendants to quash service and dismissed the case with prejudice for lack of jurisdiction. The trial court found in part that Tippecanoe's business contacts in Illinois were only occasional and irregular.

Plaintiff appealed on September 5, 1997.

## DISCUSSION

### I. Motion to Dismiss Appeal

■ Defendants have moved to dismiss the appeal as moot because plaintiff previously filed an action that is pending in Indiana and that also alleges the same conduct of defendants. We deny the motion to dismiss because defendants have cited no authority to support their argument. 155 Ill. 2d R. 341(e)(7); *City of Mattoon v. Mentzer*, 282 Ill. App. 3d 628, 632, 668 N.E.2d 601 (1996).

### II. Standard of Review

The parties disagree over what is the appropriate standard of review from a dismissal based on lack of personal jurisdiction. The cases are conflicting. Some cases state that the standard of review is whether the findings of the court were against the manifest weight of the evidence. *E.g., W.R. Grace & Co. v. CSR Ltd.*, 279 Ill. App. 3d 1043, 1046, 666 N.E.2d 8 (1996); *Dilling v. Sergio*, 263 Ill. App. 3d 191, 195, 635 N.E.2d 590 (1994); *Pilipauskas v. Yakel*, 258 Ill. App. 3d 47, 54, 629 N.E.2d 733 (1994); *Rokeby-Johnson v. Derek Bryant Insurance Brokers, Ltd.*, 230 Ill. App. 3d 308, 318, 594 N.E.2d 1190 (1992); *Finnegan v. Les Pourvoiries Fortier, Inc.*, 205 Ill. App. 3d 17, 25, 562 N.E.2d 989 (1990). Other cases state that the standard of review is *de novo* where no evidentiary hearing was held. *E.g., Cameron v. Owens-Corning Fiberglas Corp.*, 296 Ill. App. 3d 978, 983-84, 695 N.E.2d 572 (1998); *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 523, 695 N.E.2d 518 (1998); *International Business Machines Corp. v. Martin Property & Casualty Insurance Agency, Inc.*, 281 Ill. App. 3d 854, 858, 666 N.E.2d 866 (1996) (*IBM*).

■ We agree with the analysis in *Stein*, 296 Ill. App. 3d at 523, that the standard of review of against the manifest weight of the evi-

dence would apply if the trial court heard courtroom testimony on jurisdictional issues but that a *de novo* standard of review applies when the trial court heard no testimony and determined jurisdiction solely on the basis of documentary evidence. We note our agreement with the recent case *TCA International, Inc. v. B&B Custom Auto, Inc.*, 299 Ill. App. 3d 522, 527-33 (1998), which also determined that the standard of review depends on whether the trial court determined issues of fact.

■ In our case, there were neither conflicts in the evidence to resolve by the trial court nor any credibility determinations to make; only a question of law was presented to the trial court and is presented to this court. No evidentiary hearing was held. Therefore, our review of the jurisdiction issue is *de novo*.

### III. Burden of Proof

The parties also disagree over what was plaintiff's burden of proof. Plaintiff argues that her only burden of proof was to show a *prima facie* case of personal jurisdiction.

Some cases hold that plaintiff's burden is to show only a *prima facie* case of personal jurisdiction. *E.g., D.S. America (East), Inc. v. Elmendorft Grafica, Inc.*, 274 Ill. App. 3d 643, 649, 654 N.E.2d 472 (1995); *Alpert v. Bertsch*, 235 Ill. App. 3d 452, 459, 601 N.E.2d 1031 (1992); see also *Stein*, 296 Ill. App. 3d at 523 (also finds that the *prima facie* burden does not apply if courtroom testimony is heard, in which case the plaintiff's burden is the preponderance of the evidence).

It has also been held that the burden of proof to establish jurisdiction, where it is challenged, is by a preponderance of the evidence. *Finnegan*, 205 Ill. App. 3d at 25; *People ex rel. Hartigan v. Kennedy*, 215 Ill. App. 3d 880, 890, 576 N.E.2d 107 (1991). *Finnegan* noted that only federal precedent was cited by the seminal decision *Kutner v. DeMassa*, 96 Ill. App. 3d 243, 247-48, 421 N.E.2d 231 (1981), in a long line of cases requiring the party asserting jurisdiction to state only a *prima facie* case in order to prevail. *Finnegan*, 205 Ill. App. 3d at 24-25. *Finnegan* agreed with a treatise's analysis that the federal cases cited by *Kutner* were not applicable because, in federal court, lack of personal jurisdiction is resolved at trial—if the plaintiff can defeat a motion to dismiss by proving a *prima facie* case. *Finnegan*, 205 Ill. App. 3d at 25, citing 3 R. Michael, Illinois Practice § 6.2, at 61 & n.14 (1989) (see the discussion in the current 3 R. Michael, Illinois Practice § 6.2, at 61; § 10.4, at 123-24 & n.10 (1996)).

■ We reconcile the cases by holding that, while it is the burden of plaintiffs in Illinois to show a *prima facie* case of jurisdiction where

the jurisdictional issue is decided in a motion to dismiss without hearing testimony (*International Business Machines Corp. v. Martin Property & Casualty Insurance Agency, Inc.*, 281 Ill. App. 3d 854, 857-58, 666 N.E.2d 866 (1996)), a plaintiff's *prima facie* case can be overcome by a defendant's uncontradicted evidence that defeats jurisdiction (*Stein*, 296 Ill. App. 3d at 524). We note that *TCA*, 299 Ill. App. 3d at 527-33, is in agreement that plaintiff's initial burden is to establish a *prima facie* case of jurisdiction and that, if there are no controverted jurisdictional facts, jurisdiction is found in favor of plaintiff, without the requirement of proving jurisdiction by a preponderance of the evidence.

## IV. Doing Business in Illinois

■ Plaintiff first asserts jurisdiction against Tippecanoe under section 2—209(b)(4) of the Code of Civil Procedure, which provides that a "court may exercise jurisdiction in any action arising within or without this State against any person who *** (4) [i]s a natural person or corporation doing business within this State." 735 ILCS 5/2—209(b)(4) (West 1996).

The doing-business doctrine was applied by the courts before it became part of the statute effective in 1989. *E.g., Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill. 2d 190, 429 N.E.2d 847 (1981). *Cook* noted with apparent approval a definition of "doing business" as operating within the state "not occasionally or casually, but with a fair measure of permanence and continuity." *Cook*, 87 Ill. 2d at 203. The court referred to cases that held that the defendants did business in Illinois, and the court noted that in those cases there was a "regularity of activities" in Illinois. *Cook*, 87 Ill. 2d at 202.

Plaintiff relies upon *Colletti v. Crudele*, 169 Ill. App. 3d 1068, 523 N.E.2d 1222 (1988), where the court found jurisdiction over a personal injury complaint arising out of an automobile accident in Kentucky that killed a passenger who was an Illinois resident. The defendant truck driver was a resident of Illinois, and the truck was en route from Ohio to Florida and had no contact with Illinois on the trip. The three other occupants of the car or their survivors filed separate complaints in Cook County against the defendant interstate trucking company, and the company and the driver filed appearances in the other three lawsuits. In the year of the accident, .04% of defendant's gross income (or $980.58) was derived from Illinois, including stops for delivery or pick up in Illinois but not including trips made through the state without such stops.

The court stated that the company's Illinois activities could not

necessarily be minimized by reference to the percentage of its total business that its Illinois operations represented. *Colletti,* 169 Ill. App. 3d at 1079. An average of a dozen trips a year to and from an Illinois consignee was not intrinsically insubstantial. *Colletti,* 169 Ill. App. 3d at 1079. Defendant had continuous and systematic contacts with Illinois, illustrated by the history of its operations and by the fact that it did not refuse business in Illinois. *Colletti,* 169 Ill. App. 3d at 1080. Defendant regularly transported materials to Illinois. *Colletti,* 169 Ill. App. 3d at 1080.

A further consideration was that defendant was already subject to jurisdiction in Illinois in three closely similar cases arising from the same accident; the existence of the other general appearances implicated the fairness factor that must be considered in determining whether defendant's activities rose to the level of doing business in Illinois. *Colletti,* 169 Ill. App. 3d at 1080 n.6. Under the circumstances of the case, coupled with the interests of judicial economy, the court held it fair to consider defendant as doing business in Illinois. *Colletti,* 169 Ill. App. 3d at 1081.

In *Colletti,* the court considered fewer trips to an Illinois consignee than the trips Tippecanoe made to Van Leer Container in Illinois as a factor in finding the company did business in Illinois. Although part of the reason for the decision in *Colletti* was the other lawsuits in which the company had appeared, the court did find that the company had continuous and systematic contacts with Illinois and did not find determinative the small percentage of the total business that was conducted in Illinois (*Colletti,* 169 Ill. App. 3d at 1079-80).

Revenue derived from Illinois was also not found to be the dispositive variable in determining that jurisdiction could be asserted over defendant foreign corporation in *Hulsey v. Scheidt,* 258 Ill. App. 3d 567, 572, 630 N.E.2d 905 (1994). The court found that, rather than the amount of financial benefit a corporation derived from Illinois, the key consideration was the temporal relationship of the corporation with Illinois. *Hulsey,* 258 Ill. App. 3d at 573. The defendant corporation was located in Indiana, adjacent to Illinois, and it sold and installed garage doors in Illinois. It had an understanding with an Illinois corporation that any garage door installed within a designated area of Illinois would be performed by the defendant Indiana corporation. The court found that the defendant corporation had a constant return from Illinois, although it did not earn a great amount of money in Illinois (1% to 2% of its gross revenues), and its past actions in the state had a measure of permanence. *Hulsey,* 258 Ill. App. 3d at 573-74.

■ Plaintiff argues that a factor in finding that Tippecanoe was

doing business in Illinois was that Tippecanoe designated a registered agent for service in Illinois. There is no evidence in the record of this; plaintiff cites only to her unsupported statement in her response to the motion asserting lack of jurisdiction. Therefore, we will not address the issue whether the designation of an agent operated as a consent to jurisdiction.

■ Plaintiff argues that the affidavit of Greune set out specific facts concerning the extent of Tippecanoe's business in Illinois. We find that the Greune affidavit is not helpful because the affiant had no knowledge that Tippecanoe actually serviced the customers in the Illinois towns circled on the map in Tippecanoe's office at the time of the accident or at the time of suit. We also find that the Greune affidavit does not contradict the evidence supporting Illinois jurisdiction that was brought out at Baumgartner's deposition.

Plaintiff argues that Tippecanoe's gross revenues in Illinois were sufficiently large to find that Tippecanoe was doing business in Illinois. Plaintiff calculated Tippecanoe's 1995 gross revenues in Illinois as being over $257,000, based on the average revenue per mile of $1.32 and the total of 195,427 miles traveled in Illinois, but there is no record support for this figure of Illinois gross revenues because the miles traveled in Illinois could have included trips through Illinois with no pick ups or deliveries in the state.

■ Other than the amount of revenue from doing business in Illinois, an important matter in this case is the frequency of Tippecanoe's visits to Illinois to conduct business. Baumgartner testified that fewer than 30 times a year, Tippecanoe came to Van Leer Container in Alsip on business and that Northwestern Salt Company also gave Tippecanoe a lot of shipments. From time to time Tippecanoe made pick ups in Cicero, Franklin Park, Bedford Park and McCook, Illinois, and also from two or three railroad yards. Tippecanoe also delivered loads to Illinois railroad yards and had interchange agreements with three railroads in Illinois. All of its trucks were registered to operate in Illinois.

Tippecanoe's contacts with Illinois may not have been numerous, but its contacts were not random, fortuitous, or attenuated. The relatively small percentage of trips made to Illinois is not determinative; it is whether business in Illinois was fairly regular. See *Gulentz v. Fosdick*, 320 Pa. Super. 38, 49, 466 A.2d 1049, 1055 (1983) (fact that gross receipts from transportation activities in one state were only 3.7% of total gross receipts and that business in state was only a small fraction of total business did not deprive court of jurisdiction where activities were systematic and continuous). Tippecanoe's business in

Illinois was sufficiently regular to satisfy section 2—209(b)(4). 735 ILCS 5/2—209(b)(4) (West 1996).

As there were no issues of fact to determine, the trial court was not required to hold an evidentiary hearing on the jurisdiction issue. See 3 R. Michael § 10.4, at 123 (if the court cannot decide the jurisdiction issue from the affidavits and any counteraffidavits without weighing them, the court may hold an evidentiary hearing); 735 ILCS 5/2—301(b) (West 1996) (the court is to consider "all matters apparent from the papers on file in the case, affidavits submitted by any party, and *any evidence adduced upon disputed issues of fact*" (emphasis added)).

Plaintiff proved a *prima facie* case of jurisdiction based on Baumgartner's deposition testimony. Tippecanoe did not present evidence sufficient to defeat the *prima facie* case of jurisdiction. *IBM*, 281 Ill. App. 3d at 858. The evidence that Tippecanoe did not have an office in Illinois, that Tippecanoe did not advertise for business in Illinois, that Tippecanoe paid fuel tax only to Indiana, that less than 2% of shipments were for Illinois customers, that about 10% of the total miles were driven in Illinois, and that Tippecanoe did not have any "big" customers in Illinois was not sufficient to overcome the *prima facie* case of jurisdiction. We conclude that Tippecanoe was doing sufficient business in Illinois to subject it to jurisdiction to Illinois courts under the doing-business statute, and we reverse the dismissal of Tippecanoe.

Plaintiff also argues that the trial court erred in not striking Baumgartner's affidavit, which was filed by defendants to support their motion contesting jurisdiction. Plaintiff argues that the affidavit did not comply with the requirements of Supreme Court Rule 191(a) (145 Ill. 2d R. 191(a)) to set forth the factual basis for its statements and to support its statements with documentation.

Supreme Court Rule 191(a) provides:

"[A]ffidavits submitted in connection with a special appearance to contest jurisdiction over the person, as provided by section 2—301(b) of the Code of Civil Procedure, shall be made on the personal knowledge of the affiant; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." 145 Ill. 2d R. 191(a).

Plaintiff argued in the motion to strike that (1) the affidavit as-

serted that less than 2% of all trips made by Tippecanoe originated or terminated in Illinois but that Baumgartner testified at his deposition that this was an estimate only; (2) the affiant did not state any facts on how frequently Tippecanoe picked up or delivered in Illinois and did not attach certified copies of papers upon which the affiant relied upon as required by Supreme Court Rule 191(a); and (3) the affidavit did not state how the affiant determined that less than 10% of the total miles were driven in Illinois, and no documents were attached to support that estimate.

Baumgartner testified at his deposition that the 10% figure was based on the amount of miles reported on the deposition exhibits. Baumgartner did testify that the calculation of less than 2% was an estimate based on a sample of customer reports, but Baumgartner could not recall which one-month period was selected in calculating that estimate. Plaintiff has not cited authority that a chief executive officer's estimate of the company's percentage of business in a state, based on an examination of records, is inadmissible. Even assuming *arguendo* that the trial court should not have considered the testimony that less than 2% of the trips originated or terminated in Illinois, the error does not affect our decision because we have found jurisdiction based on the number of business trips to Illinois rather than the percentage of Illinois trips.

## V. Transaction of Business in Illinois

Plaintiff does not argue that Steele was subject to jurisdiction for doing business in Illinois; rather, plaintiff argues that Steele was subject to jurisdiction on the basis that the action arose out of Steele's transaction of business within the state pursuant to section 2—209(a)(1) of the Code of Civil Procedure (735 ILCS 5/2—209(a) (West 1996)). Subsection 2—209(a) is part of what is known as the "long-arm statute." 3 R. Michael, Illinois Practice § 6.2, at 58 (1996).

Section 2—209(a)(1) states:

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any *cause of action arising from* the doing of any of such acts:

(1) The transaction of any business within this State ***."
(Emphasis added.) 735 ILCS 5/2—209(a) (West 1996).

Under section 2—209(a)(1), to sustain the exercise of long-arm jurisdiction, plaintiff was required to show that: (1) defendant transacted business in Illinois; (2) the cause of action arose from this

transaction of business; and (3) personal jurisdiction was consistent with due process. *Mandalay Associates Ltd. Partnership v. Hoffman*, 141 Ill. App. 3d 891, 894, 491 N.E.2d 39 (1986).

The purpose of the statutory phrase "arising from" is to ensure that there is a close relationship between a cause of action against a nonresident defendant and her jurisdictional activities. *Volkswagen Insurance Co. v. Whittington*, 58 Ill. App. 3d 621, 624, 374 N.E.2d 954 (1978). The minimum relationship required by the phrase is that the action be one that "lies in the wake" of the commercial activities by which the defendant submitted to the jurisdiction of Illinois courts. *Volkswagen*, 58 Ill. App. 3d at 624.

*Volkswagen* supports a finding that Steele's accident in Indiana had no relation to his transaction of business in Illinois earlier in the day. In *Volkswagen*, a person (whose residency was unspecified in the opinion) was injured in an automobile accident in Indiana and sued the driver of the truck that allegedly struck her and sued the driver's employer, which was a wholesale beer distributor in Kentucky. At the time of the accident, the truck driver was traveling through Indiana en route to Wisconsin for a load of beer. The route would have taken the truck driver through Illinois, and the use of an Illinois highway some time *after* the accident in Indiana was the only contact the truck driver had in Illinois that day (*Volkswagen*, 58 Ill. App. 3d at 624). The court held that the personal injury action did not arise from a transaction of business within Illinois at or around the time of the accident. *Volkswagen*, 58 Ill. App. 3d at 624.

*Saylor v. Dyniewski*, 836 F.2d 341, 342-44 (7th Cir. 1988), also supports a finding of no jurisdiction because the court found that an automobile accident in Indiana did not arise out of business transactions in Illinois where the defendant driver had been en route from business activities in Illinois when the accident occurred.

Cases from other jurisdictions that have involved vehicular collisions outside the forum state have similarly found that personal injury causes of action did not arise from the transaction of business in the forum state within the meaning of the long-arm statute. *E.g., Amos v. Pendry*, 810 F. Supp. 146, 148 (M.D. Pa. 1992) (the car accident occurred in New Jersey, and therefore the personal injury cause of action did not arise from the defendant truck driver's acts in Pennsylvania); *Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C. App. 1979) (the personal injury cause of action based on the accident in Maryland did not arise from any act of an employee of a Maryland delivery truck company making deliveries to the District of Columbia but arose from the truck making a delivery in Maryland); *Whitaker v. Krestmark of*

*Alabama, Inc.,* 157 Ga. App. 536, 538, 278 S.E.2d 116, 118 (1981) (the personal injury cause of action arose out an accident that occurred in Alabama with a truck driven by defendant company's employee on its way to Georgia to make deliveries for the defendant company, which was a resident of Alabama); *Lancaster v. Colonial Motor Freight Line,* 177 A.D.2d 152, 158, 581 N.Y.S.2d 283, 287 (1992) (the cause of action arose from a vehicle collision in South Carolina with defendant freight line's truck, and the accident could not be related to defendant shipping goods to New York); see also *Gulentz v. Fosdick,* 320 Pa. Super. 38, 45, 466 A.2d 1049, 1053 (1983) (in discussing whether the negligence cause of action arose from the defendant's activities in the forum state of Pennsylvania, as a consideration in whether a corporation engaged in substantial and continuous activities in the state, the court found it immaterial to the case, arising out of a vehicular collision in Ohio, that the truck had just traversed Pennsylvania and entered Ohio).

■ In our case, the truck driver had traveled through Illinois prior to the time of the accident. Steele's only connection to Illinois is that he drove a truck from Illinois earlier that day before entering Indiana. Plaintiff's cause of action did not arise from the transaction of any business within Illinois as required by the long-arm statute but arose out of alleged negligent driving in Indiana. It is immaterial that the truck had traveled in Illinois before entering Indiana because the accident could have occurred even if Steele had not driven in Illinois. The weakness of plaintiff's argument is made clear if one considers that it would support jurisdiction in any other state through which the truck driver traveled at any time prior to the accident. The dismissal of defendant Steele is affirmed.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.

Affirmed in part and reversed in part; cause remanded.

WOLFSON and McNAMARA, JJ., concur.