

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| JULIUS COPELAND, | ) | No. ED111141 |
| | ) | |
| Appellant, | ) | |
| | ) | Appeal from the Circuit Court |
| v. | ) | of the City of St. Louis, Missouri |
| | ) | Cause No. 2122-CC00575 |
| WRBM, LLC D/B/A | ) | |
| WESTERN RIVERS BOAT | ) | |
| MANAGEMENT, INC., | ) | Honorable Joan L. Moriarty |
| | ) | |
| Respondent. | ) | Filed: July 25, 2023 |

### Introduction

Respondent WRBM, LLC d/b/a Western Rivers Boat Management, Inc. ("Employer") moved to dismiss Appellant Julius Copeland's First Amended Petition for lack of personal jurisdiction. The trial court granted the motion and dismissed the First Amended Petition without prejudice. Appellant now appeals. We affirm the trial court's order dismissing the First Amended Petition without prejudice.[1]

### Background

---

[1] A dismissal without prejudice generally does not yield a final, appealable judgment. *Avery Contracting, LLC v. Niehaus*, 492 S.W.3d 159, 162 (Mo. banc 2016); *Reddick v. Spring Lake Ests. Homeowner's Ass'n*, 648 S.W.3d 765, 773 n.4 (Mo. App. E.D. 2022), *transfer denied* (June 21, 2022), *transfer denied* (Aug. 30, 2022). But it may be treated as a final, appealable judgment when the party elects not to plead further and stands on the original pleadings. *Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 265 (Mo. banc 2014). Appellant elected to stand on his First Amended Petition, and we therefore treat the dismissal without prejudice as a final, appealable judgment. *See id.*; *see also Avery*, 492 S.W.3d at 162.

*Factual Background*

The facts, according to the pleadings and jurisdictional discovery, are as follows.

Employer is incorporated in Delaware and has its principal place of business in Kentucky. It is a barge company that performs towing and marine transportation work with its 34 vessels. Three of the vessels normally operate on the Upper Mississippi River. Employer tows barges within and outside the State of Missouri. Employer's clients are barge lines from all over the country, meaning some clients are located in Missouri and others are outside Missouri. Two of Employer's clients are Heartland Barge and SCF Marine, which have their corporate offices in the St. Louis, Missouri area.

Employer uses the portion of the Mississippi River in Missouri to access the Upper Mississippi River marketplace. When Employer's vessels travel through the Mississippi River adjacent to St. Louis, they use locks 24 through 28 at the St. Louis harbor.

Employer markets itself as a provider of services in the Upper Mississippi River, which runs between St. Paul, Minnesota and St. Louis. St. Louis is marked on a map on the "contact us" page of Employer's website.

Approximately 80 of Employer's employees reside in Missouri, but Employer does not solicit or target Missouri residents in particular. One such employee was Appellant, and Employer was aware of his Missouri residence. Appellant worked on the deck as a member of the crew of the M/V Tate Oglesby ("the Vessel"), which traveled throughout the portion of the Mississippi River in Missouri. Appellant received work assignments, employment-related correspondence, direct deposits, medical care for on-the-job injuries (paid for by Employer), and tax records in Missouri from Employer. Appellant traveled hundreds of miles through Missouri to get to Employer's vessels.

Sometime before May 1, 2018, Employer contacted Appellant in Missouri and gave him a work assignment for a trip on the Vessel on the Mississippi River. Appellant traveled northbound hundreds of miles in a van supplied by Employer, starting at Employer's office in Paducah, Kentucky, to catch the Vessel in Iowa and join the crew for the trip.

To get to the location where Appellant eventually was injured, the Vessel would have traveled southbound out of the Tennessee River, into the Ohio River at Paducah, out of the Ohio River at Cairo, Illinois, into the Mississippi River to St. Louis, and approximately 500 miles northbound on the Mississippi River to a location between Iowa and Wisconsin. From the time the Vessel traveled northbound on the Mississippi River from Cairo to the Missouri-Iowa state line, it was between Missouri and Illinois and at least adjacent to Missouri.

For this particular trip, Appellant boarded the Vessel on April 16, 2018 near Burlington, Iowa and was scheduled to work until May 8, 2018. Half of Appellant's trip aboard the Vessel occurred in Missouri. Prior to this voyage, the Vessel was "serviced" in Missouri.[2] The Vessel also was serviced outside Missouri. At various times, the Vessel was inspected and repaired at the First Marine, LLC shipyard in Tennessee.

On May 1, 2018, the Vessel was between Iowa and Wisconsin, hundreds of miles upriver from Missouri. At that time, Appellant suffered severe and disabling right shoulder injuries while pulling heavy equipment as the Vessel took on water due to defects in its hull.

Following Appellant's injuries, the Vessel traveled southbound on the Mississippi River through Missouri. Appellant received medical treatment for his injuries in Missouri, and Employer has yet to pay for the treatment.

---

[2] Appellant did not allege in his First Amended Petition, even upon information and belief, whether the half of the trip that occurred in Missouri was before or after his injury, who serviced the Vessel, when it was serviced, what the service consisted of, or what part of the Vessel was serviced.

*Procedural Background*

On March 22, 2021, Appellant filed his original petition. Employer moved to dismiss the petition for lack of personal jurisdiction pursuant to Rule 55.27.[3] On Appellant's motion, the trial court compelled Employer to engage in discovery related to personal jurisdiction, including interrogatories, requests for production, and a deposition, pursuant to Rule 56.01(b)(1).

After engaging in jurisdictional discovery, Appellant filed his First Amended Petition on March 3, 2022.[4] The First Amended Petition alleged negligence under the Jones Act and

---

[3] All rule references to the Missouri Supreme Court Rules (2022) unless otherwise indicated.

[4] Because our analysis turns on deficiencies in Appellant's fact-pleading, we set out the relevant factual allegations in the First Amended Petition here:

1. On or about May 1, 2018, Plaintiff Copeland suffered severe and disabling right shoulder injuries, requiring multiple surgeries, in the course of his work for Defendant as a leadman while pulling heavy equipment as Defendant's vessel M/V Tate Oglesby took on water.
. . . .
3. Plaintiff is a resident of the State of Missouri.
4. At all times mentioned herein, Defendant Western Rivers has been a corporation performing work, employing persons, and conducting business within the State of Missouri and the City of St. Louis.
. . . .
6. Plaintiff resided in Missouri while working for WRBM LLC, and Defendant was aware of Plaintiff's Missouri residence.
7. Plaintiff regularly boarded and exited vessels for WRBM LLC in Missouri, including St. Louis City.
8. Plaintiff worked for Defendant WRBM LLC as a deckhand, oiler, and mate, in Missouri and worked on the deck of Defendant's vessels building and breaking tow throughout Missouri, including in the City of St. Louis.
9. Plaintiff received work assignments from WRBM LLC in Missouri.
10. Plaintiff traveled hundreds of miles through Missouri to get to Defendant's vessels.
11. Plaintiff was paid by WRBM LLC in Missouri by deposit into his Missouri bank account.
12. Plaintiff received all employment related correspondence and tax records from Defendant at his address in Missouri.
13. Plaintiff would recover and receive medical care for on-the-job injuries, for which Defendant would pay, in Missouri.
14. Defendant WRBM LLC regularly and systematically performs work in the State of Missouri, nearly every day of the year, including operating vessels, transporting cargo, performing maintenance and repair, purchasing supplies, and servicing clients.
15. Defendant WRBM LLC uses the Mississippi River in Missouri to access the Upper Mississippi River marketplace.
16. Defendant WRBM LLC routinely works in the City of St. Louis.
17. Defendant WRBM LLC regularly hires and employs Missouri residents.
18. Plaintiff was injured on Defendant WRBM LLC's vessel, the M/V Tate Oglesby, due to its unseaworthiness and defects in the hull, which allowed for it to take on water.
19. Plaintiff received his work assignment for the subject trip on the M/V Tate Oglesby in Missouri.
20. Plaintiff traveled hundreds of miles in Missouri to catch the M/V Tate Oglesby and join the crew for that subject trip.
21. Plaintiff worked approximately half of his subject trip with the M/V Tate Oglesby in Missouri.
22. Defendant WRBM LLC's vessel, M/V Tate Ogelsby [*sic*], was serviced in Missouri.

4

unseaworthiness and maintenance and cure under general maritime law.[5] On March 17, 2022, Employer moved to dismiss the First Amended Petition for lack of personal jurisdiction. Employer argued that Appellant's alleged injury did not occur in Missouri, Employer is a Delaware LLC with its principal place of business in Kentucky, and the trial court was without general personal jurisdiction. Employer also argued that Appellant's claims "do not arise from any claimed contacts with Missouri, as required for . . . specific personal jurisdiction."

After extensive briefing and argument, the trial court granted Employer's motion to dismiss on November 7, 2022. The court noted that Appellant's First Amended Petition did not state the location of the Vessel when Appellant was injured, but an affidavit submitted in jurisdictional discovery "confirmed that on the date of the alleged injury, the vessel was on the river between

---

23. In order to arrive at the location of Plaintiff's injury event, Defendant's vessel the M/V Tate Oglesby was operated northbound on the Mississippi River through Missouri.
24. After Plaintiff's injury event, Defendant's vessel the M/V Tate Oglesby was operated southbound on the Mississippi River through Missouri.
25. But-for [sic] Defendant WRBM LLC's use of Missouri, Plaintiff's injury could not have occurred.
26. Plaintiff has received medical treatment for his related injuries in the State of Missouri.
27. Defendant has failed to timely or adequately pay maintenance and cure in the State of Missouri.

. . . .

29. On May 1, 2018, Plaintiff's injuries were caused by one or more of the following acts of negligence or omissions of Defendant, its agents, servants, and/or employees:
a. Defendant failed to provide him with a reasonably safe place to work;
b. Defendant failed to provide him with reasonably safe conditions for work;
c. Defendant failed to provide him with adequate and safe equipment with which to work;
d. Defendant failed to provide him with reasonably safe methods with which to work;
e. Defendant failed to provide adequate assistance to perform the job safely;
f. Defendant failed to provide him with an adequate crew;
g. Defendant failed to provide him with a vessel, equipment, and crew that were seaworthy; and,
h. Defendant violated applicable Coast Guard regulations, and associated codes, at United States Code Title 46.

. . . .

32. On May 1, 2018, Plaintiff's injuries were caused by one or more of the following unseaworthy conditions furnished by Defendant:
a. Defendant's crew was not reasonably adequate or competent for their intended use;
b. Defendant's equipment and vessel were not reasonably fit for their intended use;
c. Defendant's use of its equipment and vessel was not reasonably fit for its intended use; and,
d. Defendant failed to provide Plaintiff with reasonably safe conditions for work.

[5] The Jones Act provides injured seamen with a cause of action. *Dutra Grp. v. Batterton*, 139 S. Ct. 2275, 2281 (2019) (citing 46 U.S.C. § 30104). The Act incorporated the rights provided to railway workers under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq. Batterton*, 139 S. Ct. at 2281; *see also id.* at 2279-82 (describing history of claims under general maritime law).

Iowa and Wisconsin." The court thus concluded, among other things, that "the incident giving rise to the suit did not occur in the State of Missouri and Missouri does not have specific jurisdiction over Defendant." Accordingly, the trial court dismissed the First Amended Petition without prejudice. Appellant did not replead and now appeals.

## Discussion

### *Standard of Review*

The trial court's decision to grant a motion to dismiss is reviewed *de novo*. *Schlafly v. Cori*, 647 S.W.3d 570, 573 (Mo. banc 2022). When a defendant challenges a court's personal jurisdiction, the plaintiff bears the burden of establishing the defendant's contacts with the forum state are sufficient to establish personal jurisdiction. *State ex rel. LG Chem, Ltd. v. McLaughlin*, 599 S.W.3d 899, 903 (Mo. banc 2020). Whether the plaintiff made a *prima facie* showing that the trial court has personal jurisdiction is a question of law, which this Court reviews *de novo*. *Id.* at 902.

A reviewing court will take the allegations in the pleadings as true to determine whether they establish facts adequate to subject the defendant to jurisdiction in the forum state. *Andra v. Left Gate Prop. Holding, Inc.*, 453 S.W.3d 216, 224 (Mo. banc 2015). When the motion to dismiss for lack of personal jurisdiction is based on facts not in the record, a court may also consider affidavits and depositions. *Id.*; *Babb v. Bartlett*, 638 S.W.3d 97, 104 (Mo. App. E.D. 2021); Rule 55.27(a)(2); Rule 55.28. Such consideration does not convert the motion to dismiss into a motion for summary judgment as the trial court's inquiry is limited to an examination of the petition on its face and the supporting jurisdictional discovery to determine the limited question of personal jurisdiction. *Andra*, 453 S.W.3d at 224. The circuit court can believe or disbelieve any statement in the affidavits, and factual determinations are within the sole discretion of the circuit court. *Id.*

6

We will affirm on any basis supported by the record, regardless of the grounds on which the circuit court relied. *Cent. Tr. Bank v. Branch*, 651 S.W.3d 826, 830 (Mo. banc 2022); *DLJ Mortg. Cap., Inc. v. Creative Client Recovery, Inc.*, 637 S.W.3d 612, 618 (Mo. App. E.D. 2021).

*Analysis*

Personal jurisdiction is a court's power over the parties in a given case. *McLaughlin*, 599 S.W.3d at 902. Personal jurisdiction comes in two forms: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction. *Id.* In the present case, Appellant concedes the trial court did not have general jurisdiction and maintains only that the trial court had specific jurisdiction.

"Missouri courts employ a two-step analysis to evaluate personal jurisdiction." *Babb*, 638 S.W.3d at 105 (quoting *Casework, Inc. v. Hardwood Assoc., Inc.*, 466 S.W.3d 622, 626 (Mo. App. W.D. 2015)). To subject a non-resident defendant to specific personal jurisdiction in Missouri, a plaintiff must plead and prove two elements: (1) that the suit arose from any of the activities enumerated in the long-arm statute, Section 506.500;[6] and (2) that the defendant has sufficient minimum contacts with Missouri to satisfy due process. *State ex rel. Key Ins. Co. v. Roldan*, 587 S.W.3d 638, 641 (Mo. banc 2019); *Babb*, 638 S.W.3d at 105; *Lindley v. Midwest Pulmonary Consultants, P.C.*, 55 S.W.3d 906, 909 (Mo. App. W.D. 2001).

Pursuant to this analysis, we first consider whether Appellant pled that his suit arose from any of the activities enumerated in the long-arm statute. *See Babb*, 638 S.W.3d at 106. The long-arm statute provides, in relevant part:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action *arising from* the doing of any of such acts:

---

[6] All statutory references are to RSMo (Cum. Supp. 2022) unless otherwise indicated.

7

(1)  The transaction of any business within this state;

(2)  The making of any contract within this state; [or]

(3)  The commission of a tortious act within this state[.]

. . . .

3.  Only causes of action *arising from* acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

RSMo § 506.500.1(1)-(3), .3 (emphasis added).

Appellant argues the long-arm statute "is satisfied three times over." Specifically, he argues his claims arise from Employer's: (1) transaction of business in Missouri; (2) employment relationship with him, "which is both contractual in nature and the transaction of additional business in Missouri"; and (3) commission of a tortious act in Missouri.

We hold Appellant failed to plead facts necessary to satisfy the long-arm statute. This point is dispositive, and we need not address the second, due process element of the jurisdictional analysis. *See Babb*, 638 S.W.3d at 112-13 (declining to conduct due process analysis because plaintiff failed to make *prima facie* case that defendant engaged in at least one act enumerated in long-arm statute and that her claims arose from that conduct); *McLaughlin*, 599 S.W.3d at 903 n.2 ("Failure to make either showing is grounds to dismiss for lack of personal jurisdiction.").[7]

---

[7] Despite this two-step analysis accounting for both the long-arm statute and due process, Missouri courts have long repeated the maxim that the long-arm statute is construed to extend the jurisdiction of the courts of this state over non-resident defendants to the extent permissible under due process. *See, e.g., Roldan*, 587 S.W.3d at 643; *Brewer v. Cosgrove*, 498 S.W.3d 837, 844 (Mo. App. E.D. 2016); *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. banc 1970). This is counter-intuitive given that a two-step analysis would be unnecessary if the two steps were co-extensive. Also, the plain language of the long-arm statute requires that a cause of action "arise from" the defendant's acts within the state, while due process allows for suits that "arise out of *or relate to*" the defendant's contacts with the state. *Compare* RSMo § 506.500.1, *with Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (emphasis in original). Thus, the maxim remains true only so long as the long-arm statute's "arise from" requirement is interpreted to be duplicative of the "arise out of" and "relate to" elements of the due process analysis. Recently, the U.S. Supreme Court in *Ford*, 141 S. Ct. at 1026, made abundantly clear that the "relate to" element of the due process analysis is broader than the "arise out of" element and does not require "proof that the plaintiff's claim came about because of the defendant's in-state conduct," rendering the maxim that

<u>Transaction of Any Business Within this State – Section 506.500.1(1)</u>

Appellant argues first that he sufficiently alleged his causes of action arose from Employer's transaction of business in Missouri. On appeal, he repeats the allegations in his First Amended Petition that Employer "regularly and systematically performs work in the State of Missouri, nearly every day of the year, including operating vessels, transporting cargo, performing maintenance and repair, purchasing supplies, and servicing clients," and "[b]ut-for [*sic*] Defendant WRBM LLC's use of Missouri, Plaintiff's injury could not have occurred." From this, Appellant concludes that "the claims all arise out of that business because the accident that caused [Appellant's] injuries would not have occurred, and could not have occurred, without it."

The initial problem with Appellant's argument is that, as Appellant seems to acknowledge later in his brief, courts have "explicitly rejected a 'but for' causation test" as insufficient to satisfy the "arising out of requirement" for specific personal jurisdiction. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021); *see also State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 49 (Mo. banc 2017) (forgoing plaintiff's suggested but-for causation test); *Davis v. Baylor Univ.*, 976 S.W.2d 5, 8-9 (Mo. App. W.D. 1998) (noting criticism of but-for test as "overly broad" and "too lax and permitting a virtually unlimited exercise of jurisdiction").

In *Babb*, the appellant argued that the vehicle accident in which she was injured in California would not have occurred but for contracts the respondent entered, and business the respondent otherwise transacted, with others in Missouri. 638 S.W.3d at 109-10. This Court rejected the appellant's but-for causation test as insufficient to establish that her tort claims arose

---

Missouri's long-arm statute extends personal jurisdiction to the extent permissible under due process difficult to reconcile. We need not decide this issue here, as we address only the terms of the long-arm statute, and not due process. *See Babb*, 638 S.W.3d at 106-07, 112-13; *McLaughlin*, 599 S.W.3d at 903 n.2.

from the respondent's activities in Missouri for purposes of the long-arm statute. *Id.* at 110. "In short, something more is required." *Babb*, 638 S.W.3d at 109.

That "something more" is an allegation, at least, of facts showing that the plaintiff's claims arose from the defendant's transaction of business in Missouri. *See id.* at 110; *Schilling v. Hum. Support Servs.*, 978 S.W.2d 368, 371 (Mo. App. E.D. 1998). Missouri is a fact-pleading jurisdiction. *Tuttle v. Dobbs Tire & Auto Ctrs., Inc.*, 590 S.W.3d 307, 311 n.8 (Mo. banc 2019); *Gray-Ross v. St. Louis Pub. Sch.*, 643 S.W.3d 665, 669 (Mo. App. E.D. 2022), *reh'g and/or transfer denied* (Apr. 25, 2022). While no technical forms of pleading are required, a petition must contain a short and plain statement of the facts showing the pleader is entitled to relief. Rule 55.04; Rule 55.05; *Gray-Ross*, 643 S.W.3d at 669. Bare conclusions are insufficient. *Gray-Ross*, 643 S.W.3d at 669. Specifically, to demonstrate that a cause of action arose from an act enumerated in the long-arm statute, a plaintiff need not prove all the elements of the cause of action, but must make a *prima facie* showing that acts contemplated by the statute took place. *Babb*, 638 S.W.3d at 105; *Lindley*, 55 S.W.3d at 910.

As we have made clear, and as Appellant features in his brief, the "transaction of business" provision of the long-arm statute is to be construed broadly so that even a single transaction may confer jurisdiction. *See Schilling*, 978 S.W.2d at 371. But that single transaction must be "the transaction that gives rise to the suit." *Id.* For all of Appellant's allegations of Employer's transaction of business in Missouri, the First Amended Petition contains no allegation that Appellant's claims arose from any of those transactions, even having had the benefit of jurisdictional discovery. Instead, Appellant can muster only that his claims arose from Employer's business transactions in Missouri because his injuries would not have occurred "but for" those

10

transactions, a test we already have rejected to avoid "permitting a virtually unlimited exercise of jurisdiction." *See Davis*, 976 S.W.2d at 8-9.

In *Babb*, we noted the appellant's allegations that respondent worked extensively in Missouri, including picking up and delivering loads for customers, but concluded "there are absolutely no allegations in the Second Amended Petition, and no supporting evidence in the record, establishing that the tort claims against [respondent] actually 'arose from' this conduct." 638 S.W.3d at 110. We reach the same conclusion here.[8]

### Making of a Contract Within this State – Section 506.500.1(2)

Second, Appellant argues his claims arose from his employment contract with Employer. But, as Appellant conceded at oral argument, there is no allegation or evidence anywhere in the record that acceptance of the employment contract occurred in Missouri, or anywhere else for that matter. For purposes of the long-arm statute, a contract is made where acceptance occurs. *Babb*, 638 S.W.3d at 107; *Casework*, 466 S.W.3d at 626. Because the First Amended Petition does not allege that the employment contract was made in Missouri, the contract cannot be the basis for specific personal jurisdiction in Missouri. *See Babb*, 638 S.W.3d at 107.

### Commission of a Tortious Act Within this State – Section 506.500.1(3)

Finally, Appellant argues his claims arose from Employer's commission of a tortious act in Missouri. Appellant directs us to the allegations in the First Amended Petition and supporting

---

[8] Keeping in mind that Missouri's long-arm statute originally was modeled on Illinois's then-existing statute, *see State ex rel. Newport v. Wiesman*, 627 S.W.2d 874, 876 (Mo. banc 1982), we are persuaded by *Gaidar v. Tippecanoe Distrib. Serv., Inc.*, 702 N.E.2d 316 (1998). In *Gaidar*, a non-resident defendant drove a tractor trailer truck through Illinois as part of his route. *Id.* at 317. Later, the defendant allegedly drove negligently in Indiana, causing an Illinois resident's injuries in Indiana and subsequent death in Illinois. *Id.* The plaintiff argued her cause of action arose from the driver's transaction of business in Illinois for having "traveled through Illinois prior to the time of the accident." *Id.* at 323-24. The Illinois court held: "Plaintiff's cause of action did not arise from the transaction of any business within Illinois as required by the long-arm statute but arose out of alleged negligent driving in Indiana. It is immaterial that the truck had traveled in Illinois before entering Indiana because the accident could have occurred even if [the defendant] had not driven in Illinois. The weakness of plaintiff's argument is made clear if one considers that it would support jurisdiction in any other state through which the truck driver traveled at any time prior to the accident." *Id.* at 324.

11

affidavits that Appellant was injured on the vessel due to its unseaworthiness and defects in the hull, the Vessel was serviced in Missouri, and Appellant suffered economic injury in Missouri from Employer's tortious conduct.

Employer points out that Appellant did not allege in any petition or in his affidavit that any defect was caused by Employer's conduct in Missouri, or even that it existed while the Vessel was in Missouri. While Employer acknowledges the allegation in the First Amended Petition that the Vessel was serviced in Missouri, it observes there was not even an approximation of when the service occurred, nor any allegation that any defect existed at the time of the service, that Employer negligently failed to repair the vessel in Missouri, or that any service in Missouri caused the incident.[9]

Appellant essentially concedes as much. He replies not by referring us to his petition or to any discovery, but by quoting his *opening appellate brief* for the allegations that "the complaint alleges that [Employer] was negligent in Missouri because [the Vessel] had 'defects in the hull' in the period leading up to the accident, including while in Missouri, and because the company failed to ensure that the vessel was reasonably fit for sea during that time," and "[t]he complaint further alleges that the vessel 'was serviced in Missouri' numerous times before the accident, during which [Employer] failed to identify and repair the defects." Contrary to Appellant's representations to this Court, those allegations appear nowhere in the First Amended Petition. Needless to say, the trial court did not consider those allegations when dismissing the First Amended Petition, and neither do we on appeal. *See Andra*, 453 S.W.3d at 224.

---

[9] Employer also points out that plaintiff's allegation that he suffered economic injury in Missouri from Employer's actions outside the state does not confer specific personal jurisdiction over Employer in Missouri. *See, e.g., Mello v. Giliberto*, 73 S.W.3d 669, 676, 678 (Mo. App. E.D. 2002); *see also Walden v. Fiore*, 571 U.S. 277, 290 (2014).

12

Still, Appellant draws our attention to *Schilling*, in which the plaintiff sued a non-resident defendant in Missouri for negligently failing to properly inspect and maintain its bus wheelchair lift. 978 S.W.2d at 370. The plaintiff fell from the wheelchair lift while boarding the bus in Illinois. *Id.* at 369-70. The key to our finding personal jurisdiction in *Schilling* was the plaintiff's allegations that, on two dates in the months preceding plaintiff's fall, the defendant brought the bus to a Missouri company to have work done specifically on the lift and negligently failed to inspect and/or maintain the lift so as to prevent injury to the plaintiff. *Id.* at 370-71; *see Lindley*, 55 S.W.3d at 913 ("In finding personal jurisdiction existed and the activities of [the defendant] arose out of the activities enumerated in the long-arm statute, the court noted that the allegations of defective maintenance were related to repairs performed in St. Louis. The key to the decision in *Schilling* was the repair of the bus and lift in Missouri." (internal citation omitted)). Appellant's First Amended Petition lacks comparable allegations.

In its current iteration, Appellant's First Amended Petition fails to plead that Employer committed any tortious act in Missouri, and Appellant does not direct us to any jurisdictional discovery to the contrary. *See* RSMo § 506.500.1(3); *Roldan*, 587 S.W.3d at 642; *see generally Tuttle*, 590 S.W.3d at 311, 311 n.8 (noting plaintiff merely pled "some of the decisions and actions against plaintiff took place in Missouri" and otherwise failed to specify any tortious act committed by defendant in Missouri).

**Conclusion**

Appellant failed to plead, much less prove after jurisdictional discovery, that his claims arose from Employer's transaction of business in Missouri, Appellant's employment contract with Employer was made in Missouri, or that Employer committed any tortious act in Missouri. Missouri's long-arm statute therefore is not satisfied, and the trial court lacked specific personal

13

jurisdiction over Employer. We affirm the trial court's judgment dismissing Appellant's First Amended Petition without prejudice.

_____
Cristian M. Stevens, J.

Gary M. Gaertner, Jr., P.J., and
John P. Torbitzky, J., concur.

14